682 So.2d 1274 (1996)
Russell TENNESSEE, Plaintiff-Appellant,
v.
Ruthie CAMPBELL, Defendant-Appellee.
No. 28,823-CA.
Court of Appeal of Louisiana, Second Circuit.
October 30, 1996.
Rehearing Denied December 5, 1996.
*1275 Russell L. Tennessee, in proper person.
Ruthie Campbell, in proper person.
Before HIGHTOWER, STEWART and CARAWAY, JJ.
STEWART, Judge.
Russell Tennessee, appellant and natural father of Carlos O'Neil Campbell, appeals the trial court's judgment maintaining legal custody of the boy with his maternal grandmother, Ruthie Campbell. For these reasons, we vacate the trial court's judgment and render.

FACTS
On June 28, 1984, Carlos O'Neil Campbell was born out of wedlock to Sheila Yvette Campbell. At the time of Carlos's birth, Sheila lived with her mother and the defendant in this matter, Ruthie Lee Campbell, in Bastrop, Louisiana. Almost eight months after Carlos's birth, Sheila died of cancer. Following his mother's death, Carlos continued to reside with his maternal grandmother Ruthie Lee Campbell.
*1276 On August 7, 1987, the plaintiff, Russell Tennessee, filed a petition and rule for custody seeking permanent sole custody of Carlos. In the petition, Mr. Tennessee claimed that he was Carlos's natural and biological father and that he had acknowledged Carlos as his son by a notarial act dated January 4, 1985. He further contended that Ms. Campbell had denied him any contact with Carlos since Sheila's death.
Ms. Campbell answered the petition and filed a reconventional demand seeking sole custody of Carlos and child support from Mr. Tennessee. Ms. Campbell admitted that Mr. Tennessee was Carlos's father. However, she responded that Mr. Tennessee should not be awarded custody because he was an unemployed law student unable to care for Carlos. Ms. Campbell stated that awarding her custody was in Carlos's best interest because he had presided with her since his birth and she had assumed responsibility to provide all financial, physical, and emotional care of him.
After a hearing held on August 27, 1987, the trial court rendered judgment that same day awarding sole custody of Carlos to Ms. Campbell. The judgment recognized Mr. Tennessee as Carlos's natural and biological father and awarded him visitation every other weekend and on alternating holidays.
On August 11, 1993, Mr. Tennessee filed a petition for change of custody of Carlos and a rule of contempt against Ms. Campbell. In the petition, Mr. Tennessee averred that Ms. Campbell had denied him exercise of his visitation rights with Carlos and that the environment she provided was detrimental to Carlos's mental and moral well-being. He claimed that because of his current marital status, his educational background, his sex, and his status as the biological father, custody should be awarded to him.
After his attorney withdrew from representation for health reasons, Mr. Tennessee, a law school graduate, continued the matter in proper person. The trial court minutes reflect that on October 18, 1993, the trial court ordered psychological evaluations of Mr. Tennessee, his wife, Ms. Campbell, and Carlos by Dr. David Thomason. It appears from the record that these evaluations were never performed. There was no further action in this matter until August 22, 1995, when Mr. Tennessee, now residing in Richmond, Virginia, filed a petition for change of custody, again asserting that he should be awarded custody of Carlos for the same reasons expressed in his previous petition. The trial court subsequently ordered Mr. Tennessee and Ms. Campbell to attend three mandatory divorce education sessions and an interview with Dr. Thomason. Mr. Tennessee complied with the order, while Ms. Campbell did not. However, the record failed to contain a report from Dr. Thomason, and he did not testify at the hearing in this matter.
On October 26, 1995, the trial court conducted a hearing on the petition for change of custody. Again Mr. Tennessee represented himself, while Ms. Campbell was not represented by counsel. Ms. Campbell testified that Carlos had resided with her since his birth and they had a good relationship. Ms. Campbell testified that she had another daughter who lived in Bastrop who had two children near Carlos's age. She denied preventing Mr. Tennessee from seeing Carlos or talking on the telephone with him. Ms. Campbell testified that Mr. Tennessee visited Carlos when he lived in Baton Rouge, but stopped after moving to Virginia. She stated that she had no objections to Mr. Tennessee seeing Carlos or taking him to Virginia for visitation.
As to their home life, Ms. Campbell stated that she received $685 a month in Social Security benefits, $260 per month in child support from Mr. Tennessee, and food stamps. She testified that Carlos was in the fifth grade and was "doing good in school," although he had failed the second grade. Ms. Campbell indicated that Carlos had never been in any type of trouble with the law and noted that if she was not at home to greet him upon arrival from school, another relative lived nearby and provided a place for him to stay. Ms. Campbell is 69 years old, and she and Carlos reside by themselves in her home.
Ms. Campbell's 28-year-old grandson, Billy Campbell, testified that he and his mother frequently visit Carlos at his grandmother's house and provide assistance when *1277 needed in caring for him. He corroborated Ms. Campbell's testimony that Mr. Tennessee had not exercised his visitation rights. Billy Campbell also testified that Carlos had indicated that he did not want to live with his father. Mr. Tennessee asked that the trial court allow Carlos to testify, but the court refused his request.
In support of modifying the custody arrangement, Mr. Tennessee presented the testimony of his mother, Florice Tennessee, and his brother, Chester Pleasant. Florice Tennessee testified that she had witnessed her son trying to pick Carlos up for visitation, but Ms. Campbell would not let him take the child. Chester Pleasant stated that his brother resided in a "nice home" in a suburb of Richmond, Virginia, with a nearby swimming pool, jogging track, bicycle courses, and fishing area. He described Mr. Tennessee's wife, Connice, as being "loving, sharing, caring, and giving." Mr. Pleasant also testified that he had observed Mr. Tennessee and Carlos together and depicted their relationship as "very good."
Finally, Mr. Tennessee testified and described a turbulent relationship between himself and Ms. Campbell. He stated that when he first initiated proceedings to change custody in October of 1993, Ms. Campbell would not allow him to take Carlos for the court-ordered evaluation with Dr. Thomason. Mr. Tennessee did not pursue the matter further because he was moving from Baton Rouge to Virginia. He testified that upon moving to Virginia, he would regularly call Carlos to check on him. Mr. Tennessee also testified that he would call Carlos's school and visit the school when he was in town to check on his progress. He noted that he saw Carlos at school, but claimed Ms. Campbell would not permit visitation with him in her home. Mr. Tennessee also stated that Ms. Campbell often refused to talk with him over the telephone when he called. According to his testimony, she also would not allow him to take Carlos to visit his relatives. Consequently, Carlos did not know any of his family members.
After hearing testimony from Mr. Tennessee, Ms. Campbell, and their family members, the trial court ruled that the best interest of the child required that Ms. Campbell continue to maintain sole custody of Carlos because of the lack of a personal relationship between the child and Mr. Tennessee. However, the trial court granted Mr. Tennessee visitation for four days during the Christmas holidays and for four weeks during the summer following the 1995-96 school year. The trial court encouraged Mr. Tennessee to develop a relationship with Carlos so that later he could possibly gain custody of him and instructed Ms. Campbell to abstain from interfering with the visitation plan. Mr. Tennessee appeals from the trial court's judgment.

LAW
Book I, Title V, Chapter 2, Section 3 of the Civil Code regulates the determination of the custody of children in a proceeding of divorce or thereafter. In the instant case, the custody dispute is not incident to a divorce proceeding, but instead is between a parent and non-parent. However, in similar factual situations this court has looked to former La. C.C. art. 146 (now Article 131)[1] as a guideline in a custody dispute between a parent and a non-parent. See Walker v. Washington, 540 So.2d 1002 (La.App. 2d Cir.1989); Hughes v. McKenzie, 539 So.2d 965 (La.App. 2d Cir.), writ denied, 542 So.2d 1388 (La. 1989); Pounders v. Rouse, 528 So.2d 672 (La.App. 2d Cir.1988). Likewise, La. C.C. art. 245 provides:
In a proceeding in which custody of an illegitimate child formally acknowledged by both parents is sought by both parents, and in proceedings for change of custody after an original award, custody shall be awarded in accordance with the provisions on custody incident to divorce contained in Title V of this Book.
Accordingly, we look to the provisions on custody incident to divorce found in Title V of the Civil Code and the jurisprudence thereunder for guidance in this matter.
*1278 In a conflict between parents and nonparents, the parent enjoys the paramount right to custody of a child, and may be deprived of such right only for compelling reasons. State in the Interest of C.G., 609 So.2d 1049 (La.App. 2d Cir.1992).
At an initial custody contest between a parent and a nonparent, the burden of proof is on the nonparent to show that granting custody to the parent would be detrimental to the child, and that the best interest of the child requires an award of custody to the nonparent. Bolding v. Bolding, 532 So.2d 1199 (La.App. 2d Cir.1988). However, after an initial considered decree, the parent's paramount right to custody must be weighed in conjunction with the principles expressed in Bergeron v. Bergeron, 492 So. 2d 1193 (La.1986). Specifically, the concern for terminating repeated litigation and continuing a child in an established living environment. Bergeron applies to all attempts to modify custody following an earlier considered decree, including a dispute between a parent and a nonparent. Sheppard v. Hood, 605 So.2d 708 (La.App. 2d Cir.1992).
A considered decree is one in which evidence as to parental fitness to exercise custody is received by the court. Myers v. Myers, 561 So.2d 875 (La.App. 2d Cir.1990). Therefore, a parent seeking custody of a child awarded to a nonparent by a previous considered decree bears the burden of proving that the continuation of present custody is so deleterious to the child as to justify a modification of the custody, or of proving by clear and convincing evidence that the harm likely to be caused by a change of environment is substantially outweighed by the advantages a change affords the child. Bergeron, supra; Oglesby v. Oglesby, 25,974 (La. App.2d Cir. 8/17/94), 641 So.2d 1027; Odom v. Odom, 606 So.2d 862 (La.App. 2d Cir.), writ denied, 608 So.2d 153 (La.1992). A custody decree entered by default, or that is not contested, or by consent of the parties is not a considered decree. Oglesby v. Oglesby, supra; Odom v. Odom, supra; Norris v. Norris, 604 So.2d 107 (La.App. 2d Cir.1992). If the record is silent regarding whether the issue of custody has been litigated, the court will presume that the prior decree was uncontested, and hence, not a considered decree. Odom v. Odom, supra.
It is unclear in the instant record whether the judgment of August 27, 1987, was a considered decree, since the record fails to contain a transcript of this hearing. Apparently, the trial court did not treat the prior decree as "considered" because it applied the "best interest of the child" standard in awarding custody. Further, the court minutes for the prior award of custody and the judgment itself indicate that the judgment was granted in part in accordance with the stipulations of the parties. At the hearing, Mr. Tennessee claimed that he stipulated to the previous judgment. There is no other information in the record to guide us in making a determination as to whether the prior judgment was a considered decree. Consequently, we will treat the prior judgment as a "nonconsidered" custody decree. See Odom v. Odom, supra; Norris v. Norris, supra.
In the past, the law has been unclear as to who bears the burden of proof and what proof is necessary at a subsequent hearing by a parent against a nonparent to modify a "nonconsidered" custody decree, and the lack of clarity has caused this court difficulty. Compare Hill v. Hill, 602 So.2d 287 (La.App. 2d Cir.1992), and Hughes v. McKenzie, supra. However, we note that our prior decisions were made before the most recent revisions to the Civil Code's child custody articles under which this appeal is decided.[2] Article 131 now simply provides that the court shall award custody in accordance with "the best interest of the child"; this standard is the basic principle governing Articles 131 through 136. See Revision Comment (a) to Article 131. The *1279 articles that follow Article 131 are adaptations of the basic principle to specific circumstances relating to custody disputes, much as the articles following Article 2315 apply its basic tort principle to particular situations. Article 132 provides for application of the "best interest of the child" standard in determining an award of custody as between the parents; Article 133 applies this same standard in reconciling custody disputes between parents and nonparents.
Article 133 states:
If an award of joint custody or of sole custody to either parent would result in substantial harm to the child, the court shall award custody to another person with whom the child has been living in a wholesome and stable environment, or otherwise to any other person able to provide an adequate and stable environment.
In addition, Revision Comment (b) to Article 133 recognizes the parent's paramount right to custody of his child as against any nonparent, stating:
[I]t is clear that the heart of the parental primacy concept, the rule that a nonparent always bears the burden of proof in a custody contest with a parent, ... has not been affected by this revision.
The article and comment implicitly show that the best interest of the child often is best served by parental custody, even when the child has been in a "wholesome and stable environment" with a nonparent. Thus, proof of "substantial harm" is needed to show otherwise.
The importance of a parent's right to custody of the child is not a new idea in Louisiana jurisprudence. In his concurring opinion in State v. Peniston, 235 La. 579, 105 So.2d 228 (1958), the late Justice Tate recognized this most important right:
The right of a parent to his child existed before governments or other social institutions of mankind. This natural right proceeds from our Creator and exists independently of the state; the state ... does not in my humble opinion possess the power to take away in favor of a stranger the God-given right of a parent to his child, in the absence of the parent's forfeiture or abandonment of such right or of positive detriment to the child.
Id. 105 So.2d at 232.
Indeed, the parent's right to custody of the child is based upon our society's recognition of the special bond between the child and parent as a cornerstone of the continuing institution of the American family. Therefore, this concept of parental primacy and "the best interest of the child" standard are in essence two sides of the same coin: the same reasons supporting parental primacy also underlie the idea that the best interest of the child will be served by parental custody.
In recognizing these principles, we note that Article 134 provides factors for the court to consider in determining the best interest of the child. However, the Revision Comments to this article point out that these factors are illustrative, and not exclusive. Certainly the special considerations of the parent/nonparent custody dispute will not be properly weighed by looking only to the factors enumerated in Article 134, which were designed to aid in determining the best interest of the child primarily in disputes between two parents.
We therefore conclude that in determining the best interest of the child, the nonparent bears the burden of proof in an action to change custody awarded by a "nonconsidered" decree, and must show that an award of custody to the parent would result in substantial harm to the child. As to what constitutes substantial harm, Revision Comment (a) of Article 133 states:
This Article reproduces the relevant portions of the source provisions, former Civil Code Article 131(A) & (B), without substantial change. The redundant dual test for divestiture of parental custody found in the source article has been replaced with a similar, but briefer, provision.
That "redundant dual test" was the one discussed by this court in Hughes v. McKenzie, supra, and included the term "detrimental to the child," a phrase similar to "substantial harm to the child" found in the current Article 133. Accordingly, prior jurisprudence discussing "detrimental to the child" provides *1280 guidance in defining "substantial harm to the child."
In Hughes, we stated that the term "detrimental to the child" includes "parental unfitness, neglect, abuse, abandonment, and forfeiture of parental rights, and is broad enough to include any other circumstances, such as prolonged separation of the child from its natural parents, that would cause the child to suffer substantial harm." Id. at 970 (citing Mark Moreau and Chin-Chin Ho, Child Custody Awards to Nonparents Under Article 146(B), 33 Loy. L. Rev. 51, 59 (1987)).

DISCUSSION
Keeping the above-discussed precepts in mind, we now turn to the trial court's decision in the instant case. In providing oral reasons for his decision, the trial court recognized Mr. Tennessee's paramount right to custody absent a detriment to the child or if such a custody arrangement would not be in the child's best interest. The court then stated that it was not in Carlos's best interest to be removed from his home of eleven years in Bastrop and taken to Virginia with Mr. Tennessee because of the absence of a strong relationship between the two. The court essentially indicated that Mr. Tennessee should have an opportunity to build a stronger relationship with Carlos, and that if all went well, Mr. Tennessee might get custody in the future. However, the judgment said nothing in this regard, and instead simply awarded custody to Ms. Campbell, with visitation to Mr. Tennessee. We conclude that the trial court misapplied the "best interest of the child" standard by not according more weight to the "substantial harm" standard enunciated in La. C.C. art. 133.
We approve of the trial court's development of a visitation plan that provides for continuing contact between Mr. Tennessee and Carlos, allows the development of their relationship, and instructs Ms. Campbell to refrain from interfering with this relationship. Such a plan wisely provides for a favorable graduated adjustment period in this particular case leading to a placement of the child in the home of his father.
However, the only "substantial harm" articulated was the very real, but avoidable trauma of a sudden change of custody, and the graduated adjustment procedure envisioned by the trial court could eliminate or at least greatly reduce that harm. Otherwise, the record indicates Mr. Tennessee should have been given actual custody at the end of the adjustment period barring unforeseen problems, and not merely have been given the hope of that possibility. But, the judgment failed to make this clear. Such a result could have been accomplished by provisionally awarding custody to Mr. Tennessee, subject to both the graduated adjustment period in which Ms. Campbell would retain temporary custody, and a reevaluation at the end of that period that would prevent Mr. Tennessee's actual custody only in the event of unforeseen substantial harm. Since a considerable time has elapsed since the rendition of judgment, the graduated adjustment period has been in effect. Any potential substantial harm has been greatly reduced or eliminated. Accordingly, we vacate the trial court's judgment in so much as it failed to award full custody to Russell Tennessee. However we recognize that under La. C.C. art. 136., Ruthie Campbell is entitled to reasonable visitation.

CONCLUSION
For the foregoing reasons, we vacate the judgment of the trial court awarding custody of Carlos O'Neil Campbell to Ms. Campbell, and award care, custody, and control to Russell Tennessee effective January 1, 1997. Pursuant to La. C.C. art. 136(B), Ruthie Campbell is awarded the following specific visitation rights:

Summer Visitation
Ruthie Campbell shall have the right of visitation with the minor child, Carlos O'Neil Campbell, for one four-week period during each Summer, with said summer visitation to commence following the conclusion of the 1996-97 school year of the Virginia school system in which Carlos is enrolled. Ruthie Campbell shall notify Russell Tennessee by May 15th of each year with respect to the one four-week period which she chooses.

*1281 Holiday Visitation

Ruthie Campbell shall have the right of visitation with the minor child, Carlos O'Neil Campbell, for the major holidays of Thanksgiving and Christmas, subject to the following specifications. During each odd year, beginning the year 1997, Ruthie Campbell shall have visitation rights with Carlos beginning on the Wednesday before Thanksgiving and lasting until the Sunday after Thanksgiving. During each even year, beginning in the year 1998, Ruthie Campbell shall have visitation rights with Carlos beginning December 23, and lasting until December 30.
All costs, including transportation, of effectuating Ms. Campbell's visitation rights shall be borne by Mr. Tennessee. Costs of this appeal are assessed to one-half appellant and one-half to appellee.
VACATED AND RENDERED.
APPLICATION FOR REHEARING
Before HIGHTOWER, WILLIAMS, STEWART, CARAWAY AND PEATROSS, JJ.
Rehearing denied.
NOTES
[1] Pursuant to Acts 1990, No. 1008, § 8, and Acts 1990, No. 1009, § 10, Article 146 was redesignated as Article 131 by the Louisiana State Law Institute, both effective January 1, 1991.
[2] At the time Hughes was rendered, Article 146(B) provided that before a parent may be denied custody of his or her child and the child placed in the custody of a nonparent, the court must find that an award of custody to the parent would be detrimental to the child and that an award to the nonparent serves the best interests of the child. Hughes v. McKenzie, supra. Upon revision, this pronouncement was set forth in subsection B of Article 131 and was in effect at the time this court rendered our opinion in Hill.