764 So.2d 1177 (2000)
Nancy BRAGG, Plaintiff-Appellee,
v.
April HORNE, Defendant-Appellant.
No. 33,857-CA.
Court of Appeal of Louisiana, Second Circuit.
June 21, 2000.
*1178 Snellings, Breard, Sartor, Inabnett & Trascher by Wendy E.W. Giovingo, Monroe, Counsel for Appellant.
J. Edward Patton, II, Monroe, Counsel for Appellee.
Before STEWART, GASKINS and DREW, JJ.
DREW, J.
This custody contest is between the mother and the paternal grandmother. April Horne, the mother, appeals from a judgment denying her request that her only child's legal custody be changed from the child's paternal grandmother, Nancy Bragg, and given to her. For the following reasons, the judgment of the trial court is affirmed.

FACTUAL AND PROCEDURAL BACKGROUND
Ms. Horne gave birth to Timothy Joseph Joyner on August 5, 1997. She was not married to her child's father, Timothy Justin (T.J.) Joyner, Mrs. Bragg's son. At the time of the child's birth, both parents were late teenagers and living in an apartment in Mrs. Bragg's home. Ms. Horne suffered from postpartum depression for which her doctor prescribed medication. Further, Timothy had health problems, making the situation worse. The mother had difficulty caring for her child. Mrs. Bragg stepped in and provided care. Six weeks after the baby was born, the mother went to work. The unemployed father was unable or unwilling to care for the child. Mrs. Bragg placed the child in day care.
The mother and father had a tumultuous relationship and around the end of October she left Mrs. Bragg's home. Although she tried to retrieve the infant with the assistance of a sheriff's deputy, the deputy refused to remove the child, since he was residing with his father. Ms. Horne and Mrs. Bragg each filed protective orders seeking temporary custody of the infant. Mrs. Bragg obtained an ex parte order awarding her temporary custody of the child pending a hearing on November 13, 1997. On that date, the parties agreed for Mrs. Bragg to retain physical custody with the mother having visitation the last two weekends of each month and on Christmas. The parties also stipulated that the child could not be taken out of the state without written permission of the other party.
On February 24, 1998, Mrs. Bragg filed a petition against both the mother and the father and sought sole custody of the child, noting that both defendants had been arrested on drug charges in January 1998. On June 9, 1998, a contradictory hearing was held on the custody issue, resulting in a confirmation of the basic status quo: "physical" custody was granted to Mrs. Bragg; visitation, to Ms. Horne.[1]
In its oral reasons for the 1998 custody ruling, the trial court noted that the 10-month-old child was born to extremely young parents and that Mrs. Bragg took over his care for good cause. The trial judge recognized that Louisiana law provided that the natural parents are given preference in a custody dispute with a nonparent. Grandparents can obtain custody *1179 only if they establish that parental custody would be detrimental to the child. The trial court took very seriously Ms. Horne's testimony that she had suffered from depression since her early teen years and noted the young parents were unable or unequipped to cope with the child. Further, the trial court pointed out that both parents had been involved with controlled substances and had serious charges pending. As first-time parents, neither had any training or experience in parenting. The father stated he could not take care of the child. The trial court found that Ms. Home was not in a position to have complete and uncontrolled custody of her son, but that the condition was temporary. Mrs. Bragg had met the required evidentiary standard to have temporary custody of the child. The trial court expressed concern with the mother's depression along with the mother's and father's cavalier attitudes about the child's well-being. The trial court stated it was granting provisional or temporary care and custody to Mrs. Bragg with increasing visitation with Ms. Horne. The matter was set for review on December 11, 1998. The trial court directed Ms. Horne to leave the child with no one except her parents when she exercised her visitation and ordered that she take a parenting class.
The "1999 Review Hearing" was held on March 5 and 9, 1999, and the court maintained Mrs. Bragg with Timothy's custody, again subject to liberal visitation privileges in favor of Ms. Horne. In written reasons, the trial court observed that the 21-month-old child had been reared by Mrs. Bragg for most of his life. The court's primary concerns at the 1998 hearing had been the mother's inability to personally provide adequate care for the child and the mother's depression. The mother's visitation throughout the child's life was problematic with each side blaming the other in contradictory testimony. The mother attributed the problems to Mrs. Bragg's whims and failure to keep her informed as to Timothy's medical problems. Mrs. Bragg testified that concerns for the child's health necessitated curtailing some visits. The parties had a very poor relationship.
The trial court observed that the mother attended and completed a parenting class at Northeast Louisiana University and underwent a psychological evaluation by Dr. Thigpen to determine if she suffered from depression. The psychologist found no symptoms of depression but concluded the mother was mildly anxious and non-traditional, having amoral values and being insensitive to others at times. Dr. Thigpen recommended continued joint therapy for the mother and Mrs. Bragg.
Another local psychologist, Dr. Stephenson, saw Mrs. Bragg and the child for about 45 minutes and concluded they had bonded to each other. Although he did not examine the mother, he opined that Ms. Horne's flat affect in court was a symptom of depression and would deprive her child from emotional development. Dr. Stephenson stated that further testing would be required for him to make a sound diagnosis of depression.
The court also observed that when Timothy had overnight visitation with Ms. Home at her parents' home, the visitation went well, the child was happy and wellcared for and the home was more than adequate. However, the mother did not live exclusively with her parents but spent a number of nights at her boyfriend's home. The most recent phone directory listed Ms. Horne as living at 100 Chestnut, West Monroe, the residence of her boyfriend. The trial court was uncertain if the mother and the boyfriend planned to marry, but noted that the mother testified she would not be staying with her boyfriend if she got custody of Timothy.
The trial court ruled that the 1998 order granting custody to Mrs. Bragg was a considered decree because evidence of parental fitness was heard and considered. Under Louisiana law, parents have paramount right to custody of their children and may be divested of custody only for *1180 compelling reasons. The trial court found inapplicable La. C.C. art 133[2] which deals with initial awards of custody to non-parents. According to the trial court, the parent's paramount right to custody had to be considered in conjunction with the Bergeron rule which applies to disputes between parents and non-parents following a considered decree.
... [A] parent seeking custody of a child awarded to a non-parent by an earlier considered decree bears the heavy burden of proving that the continuation of the present custody is so deleterious to the child as to justify a modification of the custody or of proving by clear and convincing evidence that the harm likely to be caused by a change of environment is substantially outweighed by the advantages a change affords to the child. Sheppard v. Hood, 605 So.2d 708, 712 (La.App. 2d Cir.1992).
The trial court found that the mother had demonstrated her ability to be a mother to Timothy and that she possessed the necessary parenting skills. However, the court was not convinced that she did not continue to suffer from depression and was worried by the two psychologists' observations about the mother in their testimony. Mrs. Bragg had given exemplary care to the child who had done exceptionally well in her custody. The trial court observed that the mother's problems with visitation due to Mrs. Bragg's actions did not warrant a change in custody.
The trial court ruled that the mother did not prove by a preponderance of the evidence, much less by clear and convincing evidence, that continuing Timothy's custody with Mrs. Bragg was so deleterious as to justify a modification of custody nor did she prove that harm caused by a change of custody would be substantially outweighed by the advantages to be gained by the change. Therefore, the trial court denied the mother's request for custody of her child. Ms. Horne was granted liberal visitation and the parties were ordered to have free and open communication with no telephone call-blocking or other interference.

DISCUSSION
In her appeal, Ms. Horne argues vigorously that the 1998 custody order granting Bragg the child was a temporary provisional order which was to be reviewed in six months when the court would consider awarding custody to the mother if she had addressed areas of concern set out by the court. The mother also complains that the trial court improperly placed the burden of proof on her when the burden of proof should have been on Mrs. Bragg, the nonparent who had custody pursuant to an non-considered decree. Further, the mother alleges that the heavy Bergeron requirements should not have been used to decide this matter, since the biological parent's rights to have custody are paramount. Ms. Horne states that Mrs. Bragg did not prove by clear and convincing evidence that the mother's custody would be detrimental or substantially harmful to Timothy. Ms. Horne also maintains that Mrs. Bragg did not prove she was unfit.
Whether the trial court correctly treated the 1998 judgment as a considered decree is of critical importance. In Bergeron v. Bergeron, 492 So.2d 1193 (La.1986), our Louisiana Supreme Court sought to stabilize the lives of our state's children by preventing custody transfers and re-transfers back and forth during their childhood. In plain English, Bergeron makes it more difficult for the trial court to change a custody ruling after a considered decree.
A considered decree is one in which evidence as to parental fitness to exercise custody is received by the court. A parent seeking custody of a child awarded *1181 to a non-parent by a previous considered decree bears the burden of proving that the continuation of present custody is so deleterious to the child as to justify a modification of the custody, or of proving by clear and convincing evidence that the harm likely to be caused by a change of environment is substantially outweighed by the advantages a change affords the child. Tennessee v. Campbell, 28,823 (La. App.2d Cir.10/30/96), 682 So.2d 1274.
In its oral reasons after the 1998 hearing, the trial court described the ruling as temporary and provisional and expressed the hope that custody of the child ultimately be placed with his mother if she demonstrated her ability to be a parent to the child. However, the judgment itself granting custody to the non-parent is controlling, not the reasons for judgment. Rupert v. Swinford, 95-0395 (La.App. 1st Cir.10/6/95), 671 So.2d 502. In the written ruling in 1999, the trial court stated that the 1998 ruling was a considered decree because evidence was taken as to parental fitness. Norris v. Norris, 604 So.2d 107 (La.App. 2d Cir.1992). In this matter, the trial court heard evidence at the 1998 hearing of Ms. Horne's fitness to be a parent and awarded custody to Mrs. Bragg based upon that evidence. The trial court correctly applied the Bergeron standard to the facts in this dispute.
Therefore, in order to have obtained custody of Timothy in these proceedings, Ms. Horne had to show the continuation of present custody was so deleterious to the child as to justify a modification of the custody or of proving by clear and convincing evidence that the harm likely to be caused by a change of environment was substantially outweighed by the advantages a change would give the child. Apparently under the impression that she would be given custody of her child if she fulfilled the trial court's directions, Ms. Horne now is in a very difficult situation legally and a heartbreaking one personally. However, she placed herself in these circumstances by her own actions and inactions.
The trial court recognized that Ms. Home has made some progress and has acquired some parenting skills. However, the record shows she has not matured emotionally or improved mentally. Although now in her early 20's, the record does not reflect that Ms. Horne has secured a high school diploma or GED, nor has she received any vocational training to enhance her ability to support herself and the child. Notwithstanding her parents' testimony that she lived at home but spent some nights away, Ms. Horne candidly admitted she lived with, her boyfriend except for weekends. She is on active, supervised probation on a conviction for distribution of drugs. Her dependency upon others is shown through the fact that her mother made arrangements for Ms. Horne to attend parenting classes and made inquiries about health insurance coverage for the child. Notwithstanding medical advice to keep the child away from smoking due to his asthma and other respiratory difficulties, there was circumstantial evidence that Ms. Horne at least had been around someone smoking. Mrs. Bragg testified she had smelled cigarette smoke on Ms. Horne's clothing and in her vehicle when she came for visitation.
The testimony about Ms. Horne's mental state was troubling to the trial court, and her own psychologist concluded she was not depressed but had indications of personality problems. She was accused of theft and terminated by an employer but denied the charge. Her initial testimony under oath about her correct residence location and her phone were less than forthright. Mrs. Bragg is providing well for the needs of Timothy. The child needs to stay with his grandmother until one of his parents grows up and meets the burden of proof in Bergeron, supra. The trial court did not err in finding that Ms. Horne did not meet her burden of proof.

*1182 DECREE

Based on the foregoing reasons, we affirm the award of legal custody in favor of the paternal grandmother, Mrs. Nancy Bragg, subject to liberal visitation privileges in favor of the child's mother, Ms. April Horne. All costs are to be paid by Ms. April Horne.
NOTES
[1] Ms. Horne's appeal of the 1998 judgment was dismissed as moot by this court in an unpublished opinion. In a footnote, this court characterized the 1998 judgment as temporary and intended to last only until the scheduled December 11, 1998 review. Bragg v. Horne, 98 32057 (La.App.2d Cir.6/16/99), 761 So.2d 814. While that appeal was pending, the 1999 judgment which is the subject of the present appeal was rendered and continued the child's custody with Mrs. Bragg making the previous appeal moot.
[2] La. C.C. art. 133 directs that if joint or sole custody to either parent would result in substantial harm to the child, then the court shall award custody to the person with whom the child has been living in a wholesome and stable environment.