827 So.2d 516 (2002)
Carl C. MYLES, Plaintiff-Appellant,
v.
Reecie Ann MOORE, et al., Defendants-Appellees.
No. 36,452-CA.
Court of Appeal of Louisiana, Second Circuit.
August 30, 2002.
*517 Susan D. Scott, Shreveport, for Appellant.
F. Scott Straub & Associates, by Cynthia R. King, Shreveport, for Appellee Charmonie Hawkins.
William G. Nader, for Appellee Reecie A. Moore.
Before WILLIAMS, STEWART and HARRISON (Pro Tempore), JJ.
STEWART, J.
In this child custody case, the trial court determined that removing a child from her grandmother's home and placing her with her father would result in substantial harm to the child. As a result, the court awarded custody jointly with the grandmother having domiciliary custody. The father appealed. Finding that the court erred as a matter of law, we reverse, vacate the decision of the trial court, and render.

FACTS
This is a suit between a parent and a nonparent concerning the custody of a minor child, C.H. The child was born October 11, 1995, during the marriage of the biological mother, Charmonie Hawkins Lewis ("Charmonie"), to Timothy Hawkins. In October 1998, following Charmonie's abandonment of C.H.[1] and her two sisters, the child's maternal grandmother, appellee Reecie Ann Moore ("Moore"), obtained physical custody of the three girls. Moore obtained legal custody in March 1999.
Carl Myles ("Myles") was married to Charmonie's cousin and Moore's niece, *518 DeAndrea. Myles had a sexual encounter with Charmonie during his marriage to DeAndrea and was rumored to be the father of C.H. Charmonie dismissed the rumor when she was confronted about the paternity of C.H. by Myles and DeAndrea. In fact, Myles was not named in Moore's custody suit against Charmonie and Timothy. However, he was later named in a paternity suit brought by the State of Louisiana, DSS, Office of Family Support and he was determined to be C.H.'s biological father in a judgment rendered October 16, 2000.
On November 2, 2000, Myles filed a petition for custody, and trial was had on October 17, 2001, and December 20, 2001. After hearing the evidence, the trial court awarded joint custody of C.H. to Moore and Myles, but named Moore as the domiciliary custodian. The court ruled that the child would reside with Moore during the school year and with Myles during the summer months, with weekend visitation to each and a sharing of holiday breaks from school.

DISCUSSION
The best interest of the child is the guiding principle in all child custody litigation. La. C.C. art. 131, 134; Street v. May, 35,589 (La.App.2d Cir.12/5/01), 803 So.2d 312. In a conflict between parents and nonparents, the parent enjoys the paramount right of custody of a child, and may be deprived of such right only for compelling reasons. Street, supra; Mills v. Wilkerson, 34,694 (La.App.2d Cir.3/26/01), 785 So.2d 69; Tennessee v. Campbell, 28,823 (La.App.2d Cir.10/30/96), 682 So.2d 1274. The exception to primacy of the parent over a nonparent in a custody dispute is codified in La. C.C. art. 133 which states that:
If an award of joint custody or of sole custody to either parent would result in substantial harm to the child, the court shall award custody of another parent with whom the child has been living in a wholesome and stable environment, or otherwise to any other person able to provide an adequate and stable environment.
Moreover, in an initial custody contest between a parent and a nonparent, the nonparent bears the burden of proving that an award of custody to the parent would result in substantial harm to the child, thus necessitating an award of custody to the nonparent. In an action to modify a previous nonconsidered decree between a parent and a nonparent, the nonparent must prove that awarding custody to the parent would result in substantial harm to the child. Mills v. Wilkerson, supra.
A considered decree is one in which evidence as to parental fitness to exercise custody is received by the court. Tennessee v. Campbell, supra. Therefore, a parent seeking custody of a child awarded to a nonparent by a previous considered decree bears the burden of proving that the continuation of present custody is so deleterious to the child as to justify a modification of the custody, or of proving by clear and convincing evidence that the harm likely to be caused by a change of environment is substantially outweighed by the advantages a change affords the child. Tennessee v. Campbell, supra; Oglesby v. Oglesby, 25, 974 (La.App.2d Cir.8/17/94), 641 So.2d 1027. A custody decree entered by default, or that is not contested, or by consent of the parties is not a considered decree. Oglesby v. Oglesby, supra. In determining the best interest of the child, the nonparent bears the burden of proof in an action to change custody awarded by a "nonconsidered decree," and must show that an award of custody to the parent would result in substantial *519 harm to the child. Tennessee v. Campbell, supra.
Based on the record, it is clear that the judgment of March 10, 1999, that awarded legal custody of C.H. to her grandmother is not a considered decree in that the parental fitness of Carl Myles was never at issue because he had not yet been informed that he was the child's father. Myles did not become aware that he was the father of C.H. until June 29, 2000. Therefore, the initial custody dispute between the parent (Myles) and the nonparent (Moore) did not occur until this present suit. Consequently, the burden of proof of demonstrating "substantial harm" to C.H. was on Moore. We find that she failed to meet that standard.
The trial court based its award of joint custody on the fact that it was equally impressed with the capabilities of Carl Myles and Reecie Moore to competently parent C.H. Nonetheless, it awarded domiciliary custody to Moore because the court noted the closeness of C.H. to her two sisters and surmised that taking C.H. from the home might cause some problems for her and her sisters. Secondly, the court discussed its reservations about whether Carl Myles' wife, DeAndrea, would welcome the child into the home without inflicting any pain because of any residual bitterness she held because of the affair that resulted in C.H.'s birth. The trial judge stated,
I do have some reservations about his present wife, not that she is a bad person, but I think it's only natural, in other words, she is human, she's bound to have some pretty strong bitterness toward the way this occurred, even though he's asked for her forgiveness and she stated from the witness stand she has forgiven him, I just detect in her some bitterness and I would not want her somehow to take that out on the child. I don't think she would, but I just feel more comfortable leaving the children where they are on a domiciliary status.
(Emphasis added).
There is nothing in the record that supports either conclusion of the trial court. The only expert testimony concerning the possible effect of removing C.H. from her grandmother's home and placing her with her father came from Suzanne Craig, a counselor who counseled with Moore, C.H., and her sisters for a few months beginning in October of 1998. Craig counseled the girls because of the issues that arose out of the children being sexually abused by their mother's boyfriend at the time. She offered her opinion as to the bond she saw between C.H. and her sisters stating that to separate them would cause separation anxiety. However, she never evaluated C.H. to determine her best interests in this custody matter. In fact, she did not speak with Myles, his wife, or their daughters regarding their interactions with C.H. She never performed any evaluations of Myles and his family, nor did she observe their interactions with C.H. She offered no evidence supporting the conclusion that placing C.H. with her natural father would cause substantial harm.
The trial court's conclusion that DeAndrea would harbor bitterness toward C.H. is contradicted by her own testimony. DeAndrea denied having any negative feelings toward C.H. that would prevent her from providing the child with a loving, nurturing, and safe environment. She also stated that she treated C.H. as one of her own daughters and expressed to the child that even though she was not her natural mother, she would be a mother to her. The trial judge admitted that he did not think that DeAndrea would display any bitterness toward C.H., yet he still used *520 that reason as a basis to award domiciliary custody to Moore.

De Novo Review
In denying Myles' petition for sole custody, the trial court found that Moore had met her burden of proof in showing that remanding custody of C.H. to her father would cause substantial harm. Such a determination requires factual findings, and we acknowledge that our review of the trial court's findings is governed by the manifest error standard of review. Under that standard, however, and appellate court can, and must, reverse a lower court's factual findings when 1) the record reflects that a reasonable factual basis does not exist for the finding and 2) establishes that the finding is clearly or manifestly wrong. McGough v. Oakwood Mobile Homes, Inc., 34,091 (La.App.2d Cir.11/1/00), 779 So.2d 793 citing Stobart v. State, through Dept. Of Transportation and Development, 617 So.2d 880 (La.1993). If a court of appeal finds that a trial court made reversible error of law, or manifest error of fact, the court of appeal must determine the facts de novo from the record and render a judgment on the merits. McGough, supra.
In light of the jurisprudence outlined in this opinion we find that there was no reasonable factual basis to conclude that giving Carl Myles sole custody of his daughter would cause the child substantial harm. This finding pretermits a discussion of the other issues raised in this matter.

CONCLUSION
For the foregoing reasons, we reverse and vacate the ruling of the trial court awarding joint custody to Reecie Moore and Carl Myles and award sole custody of C.H. to Carl Myles subject to the following visitation plan:

A. LEGAL CUSTODY:
CARL MYLES shall have sole legal and domiciliary custody of the minor child, C.H. subject to the following visitation schedule of REECIE MOORE and CHARMONIE HAWKINS:

General Visitation of Reecie Moore
REECIE MOORE shall have the right of visitation on the third weekend in each month where there is no other ordered visitation such as the summer and holidays. If either party wishes to move this weekend of visitation to a weekend other than the third weekend in a given month, each party must agree to the change. If no agreement can be reached, visitation will be exercised on the third weekend. The visitation will be from on 6:00 p.m. Friday until 5:00 p.m. on Sunday.
CHARMONIE HAWKINS shall have the right visitation from 12:00 p.m. to 6:00 p.m. on the Saturdays that REECIE MOORE exercises the above weekend visitation.

Supervised Visitation of Charmonie Hawkins
CHARMONIE HAWKINS shall continue to have her visitation supervised at the home of REECIE MOORE.

Summer Visitation
REECIE MOORE shall have the right of visitation with the minor child for three weeks each summer to commence following the 2002-2003 school year of the school system in which C.H. is enrolled. REECIE MOORE shall notify CARL MYLES by May 15th of each year with respect to the one three week period she chooses to exercise visitation. The above visitation cannot be exercised at any period of time that would include the 4th of July.
CHARMONIE HAWKINS shall have the right of supervised visitation during *521 the summer from 12 noon until 6 p.m. on Friday of each of the above three weeks.

Holiday Visitation
REECIE MOORE and CHARMONIE HAWKINS shall have the right of visitation with the minor child at the home of REECIE MOORE for the major holidays of Thanksgiving and Christmas, subject to the following specifications:

Thanksgiving:
a) 2002 and every even year thereafter REECIE MOORE shall have visitation rights with C.H. beginning at 5:00 p.m. on the Wednesday before Thanksgiving and lasting until the 5:00 p.m. on the Sunday following Thanksgiving. CHARMONIE HAWKINS shall have the right of supervised visitation at the home of REECIE MOORE on the Friday after Thanksgiving from 12 noon to 6:00 p.m.

Christmas:
a) 2003 and every odd year thereafter REECIE MOORE shall have visitation rights with C.H. beginning on December 27th at 5:00 p.m. until 5:00 p.m. on December 31st. CHARMONIE HAWKINS shall have the right of supervised visitation at the home of REECIE MOORE from 12 noon to 6:00 p.m. on December 29th.

Transportation
REECIE MOORE shall be responsible for picking up C.H. at the commencement of her period of visitation and for returning C.H. at the conclusion of said visitation.

Child Support
The previous order of child support as to Carl Myles is terminated and the immediate income assignment is set aside.
CARL MYLES is ordered to pay to REECIE MOORE the total amount of child support arrears in monthly installments of a minimum of one hundred fifty dollars ($150) from the date of this judgment with the entire balance to be paid in full by May 31, 2003.

Effect of Prior Visitation Schedule
All previous visitation orders in this case including the judgments of March 8, 2002 and March 10, 1999, are vacated, and all future visitation will be conformed to the above order and exercised in a manner consistent hereto.
Costs of this appeal are assessed to equally to the appellant and the appellee.
REVERSED, VACATED, AND RENDERED.
NOTES
[1] Under La.R.S. 46:1844(W) the identity of any victim of a sex offense who is a minor must have their identity kept confidential. Although it is not a primary issue in the current custody dispute, the third assignment of error involves the testimony of Suzanne Craig which raised the issue of the sexual abuse of C.H. by her mother's former boyfriend who pled guilty to a sexual offense regarding C.H. We use her initials out of an abundance of caution.