STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

09-51

LUCILLE MCCORMIC AND
JASON RAY CRAFT

VERSUS

JUDITH ANN RIDER

**********

APPEAL FROM THE
FOURTEENTH JUDICIAL DISTRICT COURT,
PARISH OF CALCASIEU, NO. 2006-1922
HONORABLE GUY E. BRADBERRY, DISTRICT JUDGE

**********

J. DAVID PAINTER
JUDGE

**********

Court composed of Sylvia R. Cooks, Oswald A. Decuir, and J. David Painter, Judges.

**REVERSED.**

William Cutrera
910 Ford Street
Lake Charles, LA 70601
Plaintiffs-Appellees:
     Lucille McCormic and Jason Ray Craft

Todd H. Melton
P.O. Box 847
Lake Charles, LA 70602
Counsel for Defendant-Appellant:
     Judith Ann Rider

**PAINTER, Judge.**

Judith Ann Rider (Rider) appeals the trial court's judgment granting joint custody of the minor child to Rider, the child's adoptive mother, and Jason Ray Craft (Craft) and Lucille Marie McCormic (McCormic), the child's biological parents, and naming McCormic as the domiciliary parent. For the following reasons, we reverse the judgment of the trial court.

### FACTUAL AND PROCEDURAL BACKGROUND

McCormic gave birth to a son, Tyler, on May 31, 2000. Craft is his father. McCormic and Craft were never married. Craft's mother, Rider, adopted the child on or about April 27, 2001. While McCormic testified that she did not realize that she was signing adoption papers at the time and thought she was only giving Rider temporary custody, she never contested the adoption.

Not long after the adoption, Rider left Tyler with McCormic and Craft for approximately six months, from September 2002 until February 2003, while she went to California to stay with her brother, who was ill. Rider returned to Louisiana and, at some point, she and Tyler began living on the other side of duplex from Craft and McCormic. In September 2005, Craft and McCormic ended their relationship. Even though Craft moved, the living arrangement at the duplex between Rider, Tyler, and McCormic continued. McCormic evicted Rider in November 2006.

On April 24, 2006, Craft and McCormic filed a petition for custody of Tyler. The petition alleged that Rider was in ill health and unable to properly care for the child. In August of 2006, Tyler was removed from Rider's care by the State; however he was returned to Rider some time later. Tyler remained in Rider's custody at the time of trial. Rider was unemployed, and she and Tyler were living in temporary

housing at a hotel provided by FEMA. McCormic was employed and living in the duplex she and Craft had previously purchased. Craft was employed and living with his girlfriend.

The trial court ruled that the evidence warranted a change in custody such that all three parties would be awarded joint custody of Tyler, with each party having custody of Tyler for a week at a time for six weeks. After the six week period and after receiving the assessment of Danielle Caraway, from Family and Youth Counseling Agency, the trial court noted that it would designate one of three as domiciliary parent. By the time of the next hearing, Rider was employed as a substitute teacher at Henry Heights Elementary School and had moved into a three-bedroom home. She had also moved Tyler from Lake Charles Christian School to Henry Heights Elementary. Thereafter, the trial court issued judgment maintaining joint custody; however, the trial court named McCormic as domiciliary parent such that Tyler would primarily reside with her. Rider and Craft were each given visitation of one weekend per month. McCormic would also be allowed to enroll Tyler in a school of her choosing. Rider now appeals this judgment.

## DISCUSSION

This matter is controlled by La.Civ.Code art.133, which states:

> If an award of joint custody or of sole custody to either parent would result in substantial harm to the child, the court shall award custody to another person with whom the child has been living in a wholesome and stable environment, or otherwise to any other person able to provide an adequate and stable environment.

What makes this case unique is the adoption by the paternal grandmother that renders this a case of non-parents, who happen to be the biological parents of the child, seeking custody from a legal parent.

2

This court has recently stated:

> We are mindful that the "concept of parental primacy is well established in Louisiana law" and that a nonparent is "required to make a very strong showing before custody should be awarded in their favor." *Wilson v. Paul*, 08-382, p. 2 (La.App. 3 Cir. 10/1/08), 997 So.2d 572, 574. Furthermore, "[i]n a conflict between parents and nonparents, the parent enjoys the paramount right to custody of a child, and may be deprived of such right only for compelling reasons." *Id*. (quoting *Tennessee v. Campbell*, 28,823, p. 6 (La.App. 2 Cir. 10/30/96), 682 So.2d 1274, 1278). As such, the nonparent bears the burden of proving that "granting custody to the parent would be detrimental to the child, and that the best interest of the child requires an award of custody to the nonparent." *Id*. (quoting *Tennessee*, 682 So.2d at 1278).

*Whitman v. Williams*, 08-1133, p. 2 (La.App. 3 Cir. 2/4/09), 6 So.3d 852, 853.

To determine the best interest of the child, La.Civ.Code art. 134 provides that

the court shall consider all relevant factors, which may include:

> (1) The love, affection, and other emotional ties between each party and the child.
>
> (2) The capacity and disposition of each party to give the child love, affection, and spiritual guidance and to continue the education and rearing of the child.
>
> (3) The capacity and disposition of each party to provide the child with food, clothing, medical care, and other material needs.
>
> (4) The length of time the child has lived in a stable, adequate environment, and the desirability of maintaining continuity of that environment.
>
> (5) The permanence, as a family unit, of the existing or proposed custodial home or homes.
>
> (6) The moral fitness of each party, insofar as it affects the welfare of the child.
>
> (7) The mental and physical health of each party.
>
> (8) The home, school, and community history of the child.
>
> (9) The reasonable preference of the child, if the court deems the child to be of sufficient age to express a preference.

(10) The willingness and ability of each party to facilitate and encourage a close and continuing relationship between the child and the other party.

(11) The distance between the respective residences of the parties.

(12) The responsibility for the care and rearing of the child previously exercised by each party.

In this case, the trial judge found substantial harm justifying a change in custody. He cited six factors in support of his finding: (1) the OCS intervention being necessary as a result of a described disciplinary tactic used by Rider that consisted of the child being harnessed to his bed; (2) the economic status of the parties being such that Rider's status was, at best, questionable; (3) the testimony concerning Rider's lack of contact and communication with any of her seven natural children tended to indicate that Rider would not facilitate an ongoing relationship between Tyler and his extended family; (4) that for some period of time while the parties resided in the duplex, there was some type of family unit and that Tyler thrived during that time; (5) that there was no evidence that Tyler was deprived of housing, shelter, food, or clothing and that Rider did the best that she could with what she had; and (6) that Tyler was given ADHD medication under a doctor's order but without ever being thoroughly evaluated or assessed for that condition and that Tyler was given sleeping medication under a doctor's order. The trial court further stated that Rider could "never be accused of being a person who will not do what you have to do in attending the needs of your child." He found her to be a loving mother who seemed to be "a parent who would facilitate ongoing relationships." Even so, the trial court went on to say: "this Court can only find that the current custodial arrangement as set forth in Civil Code Article 131 would indeed be detrimental to this child and this, as a result

4

thereof, will allow this Court to award custody to nonparents who can provide a wholesome, adequate, stable environment."

After the six week period, the trial court received Caraway's report. Caraway's report indicated that Rider did not demonstrate a willingness to have a positive co-parenting relationship with either Craft or McCormic which "speaks to her lack of concern for what is in the best interest of Tyler." Caraway found Tyler to be anxious and confused and was concerned over his report of abusive behavior by Rider. She recommended that domiciliary custody be shared between Craft and McCormic. It was Caraway's conclusion that Rider had "misinterpreted" her role in her grandson's life.

Again, we must note that Rider is the parent in this case by virtue of her adoption of Tyler. This adoption has not been challenged. Thus, Rider enjoys the paramount right of custody, and Craft and McCormic bear a heavy burden of proof. We find it important to note that while the trial court found there was substantial harm, it granted Rider joint custody of Tyler. Pursuant to La.Civ.Code art. 133, if substantial harm is found, then the parent cannot have custody. The trial court's own comments regarding its findings as to Rider's fitness as a parent negate its finding that substantial harm to the child existed. Obviously, if the trial court found that Rider was still entitled to joint custody, Craft and McCormic failed to meet the heavy burden of proving that custody in Rider's favor would result in substantial harm to Tyler. Since no substantial harm was proven, the trial court was prohibited from granting custody to the nonparents. Therefore, the trial court erred in awarding custody the nonparents, Craft and McCormic, in this case.

5

**DECREE**

The trial court's judgment is reversed in its entirety and set aside. We hereby render judgment in favor of Rider dismissing Craft and McCormic's demands. All costs of this appeal are assessed to Craft and McCormic.

**REVERSED.**