*482 PETERS, J.,
dissenting.
Llf the dispute in this matter were between the mother and father of the minor child at issue, I would be in complete agreement with the majority opinion. However, the effect of the majority opinion is to elevate the non-parent litigants to the status of parents and effectively preclude the natural father from ever being able to reclaim custody of his minor child. For the reasons that follow, I find that the trial court erred, not only in maintaining the grandparents as custodial parents, but in its initial award of domiciliary custody to the grandparents as well.
The whole problem with non-parents initiating proceedings to obtain custody of a minor child is that there exists no procedural authority under Louisiana law for such a direct challenge by a non-parent to the long recognized paramount right of a parent to custody of his or her child. In this case, the grandparents, not the parents, instituted the custody litigation.
Custody of minor children is first addressed in Section 3 of Title V of the Louisiana Civil Code. That Section begins •with La.Civ.Code art. 131, which simply provides that “[i]n a proceeding for divorce or thereafter, the court shall award custody of a child in accordance with the best interest of the child.” It is only when parental custody “would result in substantial harm to the child” that non-parent custody is even considered. La.Code Civ.P. art. 133. Custody of illegitimate children is governed by the same rules. La. Code Civ.P. art. 245.
| jjThus, the Louisiana Civil Code provides that the only instance where a non-parent may become involved in a custody matter is by application of La.Civ.Code art. 133. Pursuant to this article, a non-parent’s involvement is contingent on the parents raising the issue in a prior custody proceeding. Even then, the non-parent’s right arises only if the trial court determines that parental custody would result in substantial harm to the child and that it is in the best interest of the child that custody be granted to a non-parent.
The fact that non-parents, and specifically grandparents, do not have the right to institute custody proceedings does not leave them powerless to protect minor children in whom they have an interest. In fact the Child in Need of Care provisions of the Louisiana Children’s Code directly provide the relief that was needed in July of 2004, and does so without elevating a non-parent to parent status. Louisiana Children’s Code Article 601 provides in pertinent part:
The purpose of this Title is to protect children whose physical or mental health and welfare is substantially at risk of harm by physical abuse, neglect, or exploitation and who may be further threatened by the conduct of others, by providing for the reporting of suspected cases of abuse, exploitation, or neglect of children; by providing for the investigation of such complaints; and by providing, if necessary, for the resolution of child in need of care proceedings in the courts.
The Article further states that proceedings under the Child in Need of Care provisions “shall be conducted expeditiously to avoid delays in achieving permanency for children.” Id. (Emphasis added). This is clearly the better alternative to a judicially created right of action to non-parents for physical custody. In fact, in the matter before us, it would have eliminated the very delays and roadblocks built into this litigation that deprive a parent of the right to receive consideration of rehabilitation efforts that might not change a prior order of custody to the other parent, but certainly should have more weight in a dispute between the parent and a non-parent.
*483 |8I would dispose of this matter, pursuant to the authority found in La.Code Civ.P. art. 927(B), by finding that the non-parent plaintiffs had no right to bring this action in the first place.[1] If the grandparents felt a need to continue to pursue a means of protecting their grandchild, the provisions of the Louisiana Children’s Code would be immediately available. If, as the grandmother testified, the real purpose of maintaining custody is to effect an ultimate transfer of custody to her daughter, this dismissal would also have the effect of placing the mother and father on equal footing and eliminate the current advantage of the mother.
Even assuming that a non-parent has a right to bring a custody action against the parents of a child, I disagree with the majority’s affirmation of the trial court’s judgment continuing domiciliary custody in the grandparents. The trial court found that because the first two times the custody issue was addressed resulted in consent decrees, the father was required to establish a material change of circumstances and that the transfer of domiciliary custody to him was in the best interest of the child before the trial court could change the consent decree. In other words, the father was relegated to the same burden in a proceeding against a non-parent as he would have had against the mother of the child. As previously stated, this elevates the non-parent to the status of parent. Such a holding flies in the face of the parental preference rule.
It is axiomatic that a parent has a paramount right to the custody of his or her child. Creed v. Creed, 94-286 (La.App. 3 Cir. 12/21/94), 647 So.2d 1362. As stated in that opinion,
[T]he party moving that someone other than the parent have custody has the burden of proving that the parent or parents are unfit and that substantial harm would result to the children. Secondly, Louisiana Civil Code article 131 (formerly La.Civ.Code art. 146) and the jurisprudence | .¡interpreting it establishes a two prong test before the trial court can grant custody to a non-parent: the trial court must find that an award of custody to the parent would be detrimental to the child or result in substantial harm and that the award of custody to a non-parent is required to serve the best interests of the child. Lastly, the burden is a “strict one” in which the non-parent seeking custody must show “compelling reasons by convincing proof’ that custody to the parent would result in substantial harm.
Id. at 1365 (citation omitted).
This court recently reaffirmed the views expressed in Creed in Whitman v. Williams, 08-1133, p. 2 (La.App. 3 Cir. 2/4/09), 6 So.3d 852, 853:
We are mindful that the “concept of parental primacy is well established in Louisiana law” and that a nonparent is “required to make a very strong showing before custody should be awarded in their favor.” Wilson v. Paul, 08-382, p. 2 (La.App. 3 Cir. 10/1/08), 997 So.2d 572, 574. Furthermore, “[i]n a conflict between parents and nonparents, the parent enjoys the paramount right to custody of a child, and may be deprived of such right only for compelling reasons.” Id. (quoting Tennessee v. Campbell, 28,-823, p. 6 (La.App. 2 Cir. 10/30/96), 682 So.2d 1274, 1278). As such, the nonpar-ent bears the burden of proving that *484 “granting custody to the parent would be detrimental to the child, and that the best interest of the child requires an award of custody to the nonparent.” Id. (quoting Tennessee, 682 So.2d at 1278).
Thus, in order for the grandparents to gain custody of the minor child, they must satisfy the two prong test set out in La. Civ.Code art. 133. They must prove by clear and convincing evidence that a parent’s custody of his or her own child will cause substantial harm and that the best interest of the child necessitates custody in their favor. The plaintiffs in this case were far from successful in satisfying that burden.
The child’s grandmother testified initially that she and her husband intended to maintain custody only until the parent or parents rehabilitated themselves. In other words, there was never an attempt to obtain “permanent custody.” They were simply trying to protect their granddaughter from her struggling parents. On the one hand, the grandmother testified that the father has cooperated in every way possible, has been clean of substance abuse for a significant period, and has proven himself to be |fia good and loving parent. On the other hand, she objected to allowing him the opportunity to raise his own child solely because she believes drug addition is “for life,” and, therefore, he “might” relapse in the future. This was the extent of the evidence on the father’s fitness.
When recalled to the stand later in the trial, the grandparents’ true motivation came to the surface. When questioned about her daughter’s position in this matter,[2] the grandmother made it perfectly clear that she would never consent to custody by the father because she was waiting for her daughter to seek custody and had every intention of helping her in every way to obtain custody. This position was expressed despite the fact that the child s mother had the same drug addiction as did the father. Suddenly, addiction “for life” and the fear of relapse in the future became of less importance.
I find, as did our brethren in the first circuit in Robert v. Gaudet, 96-2506, (La. App. 1 Cir. 3/27/97), 691 So.2d 780, that a consent judgment does not alter the non-parents’ obligation to establish the two-fold burden of La.Code Civ.P. art. 133.
To divest a parent of custody based only on a finding of material change of circumstances and that an .award to a nonparent was in the best interest of the child, would circumvent the paramount right of the parent to the child. The correct procedure for a divestiture, or a substantive modification of parental custody, is the threshold determination that a material change affecting the child’s welfare has occurred. If the trial court finds in the affirmative, the court follows with a determination of whether continued parental custody would result in substantial harm to the child. See Rupert v. Swinford, 95-0359, at p. 3-4 [La. App. 1 Cir. 10/6/95], 671 So.2d [502,] 505.
To do otherwise would create a trap for the unwary. Nonparents would be relieved of the burden imposed by Civil Code article 133 in all future parent-nonparent disputes after the initial award of custody to the parents by consent decree. Article 133 would be eviscerated.
Id. at 783 (emphasis in original).
| fiThus, in the hearing we are reviewing, the burden of proof remained with the grandparents despite the two previous consent judgments between the parties. It bears stating again that to allow the grandparents to rely on the lesser burden of proof employed in proceedings between parents seeking modification of a non-con *485 sidered decree would effectively elevate them to the status of parents. Divestiture of a parent’s paramount right to custody occurs only upon a showing of compelling reasons by convincing proof. Creed, 674 So.2d 1362.
Certainly, the grandparents are to be commended for stepping in and protecting their granddaughter in her time of need. However, we should not judicially create a situation where parents who have made mistakes and learned from those mistakes are precluded from raising their children. To do so destroys the long-recognized paramount right of parents to raise their children. This case is a prime example of a situation that starts with good intentions, and, if the non-parents are not held to the stringent burden of proof, will result in a father losing his opportunity to raise his child — not because of the mother’s actions, but because of a non-parent who instituted an action not sanctioned by our procedure law. I would reverse and award the father custody, finding that the grandparents failed in their burden of proof.

. I recognize that many reported cases involve non-parents as the initial plaintiffs in custody disputes. However, in the vast majority of these cases, the right of action issue never arose. (But see the dissent in Williams v. Boone, 99-106 (La.App. 3 Cir. 5/19/99), 733 So.2d 1257).

. The daughter has never brought any action for return of custody.