803 So.2d 312 (2001)
James Edward STREET and Terry Elaine Street, Plaintiffs-Appellants,
v.
Kathy Lynn MAY and Charles Darren DeCelle, Defendants-Appellees.
No. 35,589-CA.
Court of Appeal of Louisiana, Second Circuit.
December 5, 2001.
*313 Robert Presnell McLeod, Jr., Linda Kay Ewbank, Monroe, Counsel for Appellants.
David Carlton McMillin, Monroe, Counsel for Appellee, Beryl Lynn May.
Holly Angelene Chambers, Monroe, Counsel for Appellee, Kathy Lynn May DeCelle.
Lavalle B. Salomon, Monroe, Counsel for Appellee Charles Darren DeCelle.
Before WILLIAMS, CARAWAY and PEATROSS, JJ.
CARAWAY, Judge.
In this child custody case, the trial court determined that the child's mother and his putative father posed a risk of substantial harm to the child, and awarded custody jointly to the child's maternal and paternal grandparents, who now appeal. Finding *314 no error in the trial court's ruling for joint custody, we affirm the decision but amend the judgment regarding the visitation rights of the mother.

Facts
James Street and Terry Street ("James" and "Terry" or "the Streets") are the grandparents[1] of five-year-old Elijah May ("Elijah") and live in Shreveport. Beryl Lynn May ("Lynn") is Elijah's maternal grandmother and lives in West Monroe. When Elijah was born, Terry's son, Charles Darren DeCelle ("Darren"), lived with Elijah's mother, Kathy May DeCelle ("Kathy"), and the Streets and Darren believed that Darren was Elijah's father.
In November, 1996, James and Terry filed a petition for custody of Elijah alleging that Darren and Kathy were unable to provide for Elijah's physical and emotional needs. Kathy and Darren got married in December, 1996. Subsequently, the parties stipulated that custody was no longer an issue, and James and Terry instead sought overnight visitation with Elijah. A consent judgment awarding James and Terry visitation with Elijah for two days per month was signed shortly after Elijah's second birthday on August 31, 1998.
On June 19, 2000, James and Terry filed their second rule for Elijah's custody against Darren and Kathy, alleging that both parents were unfit due to their alcohol and drug abuse problems. The petition further alleged that Darren and Kathy had physically separated in December, 1998, and that Kathy was presently living with another woman, Susan Savage. At James and Terry's urging, and with their financial support, Kathy and Elijah had lived in Shreveport from June through December, 1999, but then returned to West Monroe. James and Terry again sought primary domiciliary custody of Elijah.
Kathy answered the petition alleging that Darren was not Elijah's biological father and that no grandparent relationship existed between the Streets and Elijah. Lynn intervened in the proceeding on July 14, 2000, alleging that she had been Elijah's primary caregiver virtually since he was born, as well as the primary caregiver for Kathy's older son, Kristian, then age 7 (Elijah's half-brother). She sought Elijah's primary custody subject to reasonable visitation for his parents and the Streets. A series of interim orders indicate that Elijah lived in Shreveport with the Streets from the time they filed the second rule for custody, apparently until the trial was concluded in February, 2001.
Following her mother's intervention in this action, on September 21, 2000, Kathy filed a stipulation that "she will not pursue any further efforts to retain custody of Elijah as his natural mother ... and [that she] declares that it is in the best interest of Elijah that her mother, Beryl Lynn May, be named the primary domiciliary custodian of Elijah."
The trial was conducted over eight days in late 2000 and early 2001. The trial court's written reasons were signed February 21, 2001, and incorporated into the judgment dated April 17, 2001. The trial court awarded joint custody of Elijah to the Streets and Lynn pursuant to a Joint Custody Plan of Implementation, which terms were incorporated into the judgment. Lynn was to exercise physical custody over Elijah during the school year and the Streets would exercise their physical custody primarily during the summer with other periods of visitation throughout *315 the year.[2] The trial court further found that any award of custody in favor of Elijah's putative father, Darren, or Elijah's mother, Kathy, would result in substantial harm. Finally, the judgment provided that in the event Kathy resumed living in Ouachita Parish at any time prior to May 31, 2003, the periods of physical custody established in the Joint Custody Plan of Implementation "shall reverse ... without the necessity of a judicial hearing or a transfer of a joint custody order." It is from this judgment that the parties appeal.

Applicable Law
The best interest of the child is the guiding principle in all child custody litigation. La. C.C. arts. 131, 134; Mills v. Wilkerson, 34,694 (La.App. 2d Cir.3/26/01), 785 So.2d 69. In a conflict between parents and nonparents, the parent enjoys the paramount right to custody of a child, and may be deprived of such right only for compelling reasons. Mills v. Wilkerson, supra; Martin v. Dupont, 32,490 (La.App. 2d Cir.12/8/99), 748 So.2d 574; Bracy v. Bracy, 32,841 (La.App. 2d Cir.10/27/99), 743 So.2d 930; Tennessee v. Campbell, 28,823 (La.App. 2d Cir.10/30/96), 682 So.2d 1274.
Custody awards to nonparents are governed by La. C.C. art. 133. In Re: Tutorship of M.A.H., 33,717 (La.App.2d Cir.8/23/00), 765 So. 2d 1181. La. C.C. art. 133 provides as follows:
If an award of joint custody or of sole custody to either parent would result in substantial harm to the child, the court shall award custody to another person with whom the child has been living in a wholesome and stable environment, or otherwise to any other person able to provide an adequate and stable environment.
At an initial custody contest between a parent and a nonparent, the burden of proof is on the nonparent to show that granting custody to the parent would be detrimental to the child, and that the best interest of the child requires an award of custody to the nonparent. La. C.C. art. 133, Comment (b); Mills v. Wilkerson, supra; Martin v. Dupont, supra; Bracy, supra; Tennessee v. Campbell, supra.
Regarding the visitation rights of grand-parents, La. C.C. art. 136 provides that "[u]nder extraordinary circumstances, a relative, by blood or affinity, or a former stepparent or stepgrandparent, not granted custody of the child may be granted reasonable visitation rights if the court finds that it is in the best interest of the child."
The best interest of the child test under Civil Code articles 131 and 134 is a fact-intensive inquiry requiring the weighing and balancing of factors favoring or opposing custody in the competing parties on the basis of the evidence presented in each case. Warlick v. Warlick, 27,389 (La.App. 2d Cir.9/29/95), 661 So.2d 706. Each child custody case must be viewed within its own peculiar set of facts. Galjour v. Harris, 00-2696 (La.App. 1st Cir.3/28/01), 795 So.2d 350, writs denied, 01-1238, 01-1273 (La.6/1/01), 793 So. 2d 1229, 1230, cert. denied, ___ U.S. ___, 122 S.Ct. 545, 151 L.Ed.2d 422. The trial *316 court is in the best position to ascertain the best interest of the child given each unique set of circumstances. Id. It is well-settled that a court of appeal may not set aside a trial court's finding of fact in custody disputes in the absence of manifest error or unless it is clearly wrong. Evans v. Lungrin, 97-0541, 97-0577 (La.2/6/98), 708 So.2d 731. A trial court's assessment of the probative value of evidence is accorded great weight and will not be disturbed absent a clear abuse of discretion. Mills v. Wilkerson, supra.
In Howze v. Howze, 99-0852 (La.5/26/99), 735 So.2d 619, which involved full-blooded siblings, the supreme court described the separation of children in a family as a custodial disposition that courts seek to avoid and that when feasible, a court should shape its orders to maintain family solidarity. Although the custody of half-siblings is not an issue in this case, the record reveals that Lynn has maintained a home for Kathy's other child, Kristian, since he was an infant. Accordingly, custody of half-siblings is a factor to be considered in this case. See also, McKinley v. McKinley, 25,365 (La.App. 2d Cir.1/19/94), 631 So.2d 45; Roberie v. Roberie, 33,168 (La.App. 2d Cir.12/8/99), 749 So.2d 849; In re: Tutorship of M.A.H., supra.

Discussion
Significantly, this appeal does not concern the parental rights of either Kathy or Darren for the custody of Elijah. Darren's paternity was made an issue in the course of these proceedings but it never formed the subject of a judgment, nor a basis for the trial court's ruling of joint custody in favor of Lynn and the Streets. Instead, the trial court determined that because of Kathy's and Darren's drug abuse problems, an award of custody to either Kathy or Darren would result in substantial harm to the child. Neither party appeals that ruling, although Kathy raises two other issues discussed below. Therefore, the substantial harm criterion of La. C.C. art. 133 having been established in this case, this appeal concerns a custody contest between non-parents, the child's grandparents, which is governed by Article 133.

Joint CustodyGrandparents
In three assignments of error, the Streets appeal the trial court's award of joint custody which allowed Lynn the largest amount of physical custody of Elijah during the school year. The Streets claim that the "best interest" standard applicable to an award of custody to a non-parent under Articles 133 and 134 was not properly measured by the trial court in view of the expert testimony and the continuous threat to Elijah's well-being posed by Kathy. The Streets seek the dominant, if not sole, custodial role for the child with regular visitation for Lynn. Likewise, by virtue of her answer to the appeal, Lynn seeks a designation as sole custodian and argues that joint custody in non-parents is not permissible under Article 133.
Although the trial court's ruling referenced each party as "domiciliary grandparent(s)" for the periods of physical custody enjoyed by each, the joint custody implementation order did not designate Lynn as the domiciliary custodian, as that status is contemplated under La. R.S. 9:335(B), dealing with custody proceedings between parents. Instead, the order, in addition to providing for the parties' physical sharing of custody (see footnote 1 supra), provided as follows:
1. The intent of this plan is to ensure that Elijah has frequent and continuing contact with both the Streets and Mrs. May, and to encourage and facilitate the ability of the Streets and Mrs. May to share the rights *317 and responsibilities of the rearing of Elijah.
2. The Streets and Mrs. May shall consult together frequently by telephone or correspondence, if personal conference is impractical, in an effort to mutually agree in regard to the general health and welfare, education and development of Elijah to the end that, so far as possible, they may adopt a mutually harmonious policy in regard to Elijah's upbringing.
3. Neither the Streets or Mrs. May shall attempt, or condone any attempt, directly or indirectly, by any artifice or subterfuge whatsoever, to estrange Elijah from the other party, or to injure or impair the mutual love and affection of Elijah.
4. At all times the Streets and Mrs. May shall encourage and foster in Elijah sincere respect and affection for both parties and shall not hamper the natural development of the child's love and respect for the other party.
5. The Streets and Mrs. May shall keep the other party advised as to any serious illness or other major developments with respect to Elijah.
6. The Streets and Mrs. May will provide advance notification to the other party regarding proposed and forthcoming medical care. However, in the event of a medical emergency, each party is hereby authorized to make medical decisions when all parties are not available for mutual and prior consultation. This includes the right to sign any and all medical, dental and/or surgical authorizations and/or consents.
7. The Streets and Mrs. May shall be entitled to immediate access from the other or from a third party to records and information pertaining to Elijah including, but not limited to, medical, dental, health, school, or educational records.
8. The Streets and Mrs. May shall keep the other party currently advised of the other's residence and business address, telephone numbers, and whereabouts on vacations and out of state trips with Elijah.
9. The Streets and Mrs. May shall be entitled to speak to Elijah by telephone, at all reasonable times and intervals when the child is in the physical custody or subject to the control of the other party.
* * *
13. The party with physical custody of Elijah shall have the authority to make the necessary day-to-day decisions of the moment affecting the minor child. However, substantial decisions of long term consequence will be resolved by consensus of the parties.
* * *
15. If either Mrs. May or the Streets become unable to care for Elijah due to an illness of that party, they shall seek assistance from the other party to care for Elijah before seeking the aid of a third party.
The Streets' argument for trial court error seizes upon the trial court's troubling concern, expressed in its written ruling and judgment, over Lynn's enabling relationship with Kathy. While Lynn was awarded the longer school-year share of the joint custody because of her ability as a retired teacher, her custody of Elijah's half-sibling and other family support in West Monroe, the court expressed concern about Kathy's ability to impose her will on her mother and to disrupt Elijah's and *318 Lynn's lives, causing "substantial harm." While we address the issue of Kathy's visitation rights below, we do not find that the trial court abused its discretion in weighing the factors for the determination of the child's best interest and in fashioning the joint custody arrangement between these grandparents.
Lynn, who at the time of trial was sixty-four years old, is a retired school teacher and has been employed as Education Director for the Boy's and Girl's Club of West Monroe for the past eleven years. Lynn, like the Streets, provided sufficient evidence of substantial involvement in Elijah's life during much of the time that Kathy resided in West Monroe, since Elijah's birth. She therefore qualified, as well as the Streets, as a person with whom the child lived in a wholesome and stable environment during large portions of his life.
The trial court accepted Dr. Bobby Stephenson as an expert in psychology. Dr. Stephenson evaluated Elijah, James, Terry, Lynn, Kathy and Darren based on personal interviews and his analysis of a series of psychological tests customarily used in custody disputes. Dr. Stephenson's testimony predominately focused on Kathy's and Darren's inability as parents to provide Elijah with a suitable environment and on the grandparents' ability to step in as surrogates and assume responsibility for Elijah's upbringing. He admitted that when he evaluated James, Terry, Elijah, Darren and Kathy, Lynn was not technically a candidate for custody because she had not yet intervened in the suit. He assumed that James and Terry were Elijah's primary caregivers in lieu of Kathy and Darren. His evaluation did not address the fact that Elijah lived with Lynn between December, 1998 and June, 2000, except for the interval in 1999 when Kathy and Elijah lived in Shreveport. He acknowledged that Lynn's existing role as the primary caregiver for Elijah's half-brother could be a significant factor, because sibling relationships are important and should be maintained. Dr. Stephenson testified that at the time he performed his evaluation of the Streets, it was his professional opinion that Elijah's best interest would be served by continuing to reside with them. Nevertheless, after subsequently learning of Lynn's involvement as Elijah's primary caregiver and her intervention, he would recommend that both sets of grandparents be extensively involved in rearing Elijah regardless of the ultimate custodial arrangement.
From our review of the expert testimony and the facts concerning the involvement of both sets of grandparents in Elijah's upbringing, we agree with the trial court's conclusion that the choice was "between two favorable alternatives." The trial court's allocation of the physical custody between Lynn and the Streets was not an abuse of its discretion for the determination of the best interest of the child.
Next, each side argues on legal grounds for a modification of the court's judgment from joint custody to sole custody in favor of either the Streets or Lynn, with the non-custodial grandparent(s) having only a visitation allowance under Article 136. Nevertheless, we do not find that the award of custody jointly to nonparents is prohibited by Article 133.
The language of Article 133 directs the court to "award custody to another person" in the present situation where the parents' right to custody has ended. Nevertheless, the singular noun "person" as employed in the Civil Code does not exclude the designation of several persons. La. C.C. art. 3506(2); Comment (c) to La. C.C. art. 133. While joint custody requires a delineation of the authority for important decisions for the child to prevent *319 disputes among the joint custodians, the trial court's implementation order addresses the sharing of the authority of grandparents, and nothing in the record indicates that all three of these grandparents cannot act together responsibly and in harmony for the best interest of the child.
Accordingly, we affirm the trial court's grant of joint custody to Lynn and the Streets to be conducted in accordance with the sharing arrangements of the implementation order.

Visitation Rights of Kathy
The implementation order provided that while Elijah is in the custody of Lynn, Kathy "shall have visitation with Elijah during the day; however, all overnight visitation with Elijah and Kathy May DeCelle shall be supervised by Lynn." A similar allowance for visitation was provided for Darren.
Despite this open-ended right of visitation, the trial court apparently felt that if Kathy removed herself from West Monroe, and moved to New Orleans where she was planning on pursuing training for potential employment, her ability to "impose her will on her mother," and present a risk of substantial harm to Elijah because of her substance abuse problems, would be diminished. The trial court's judgment therefore provided "that in the event Kathy Lynn May DeCelle re-establishes her residence in Ouachita Parish, Louisiana at any time prior to May 31, 2003, the attached Joint Custody Plan of Implementation for the minor child, Elijah, shall reverse, and the Streets shall be (sic) have physical custody of Elijah during the school year just as set forth for Mrs. May in the Plan, and Mrs. May shall have physical custody of Elijah during each summer as set forth for the Streets in the Plan without the necessity of a judicial hearing or a transfer of a joint custody order." The May 31, 2003 date coincides with the time that Kathy intended to complete the training that she wished to obtain in New Orleans.
For differing reasons, the Streets, Lynn and Kathy all question the priority of these rulings regarding Kathy's status. The Streets assign as error Kathy's open-ended visitation right which permits her "free and unsupervised access and control of Elijah so long as she does not keep him overnight." Lynn questions the judgment's "automatic non-judicial change of custody" condition based solely upon where the non-custodial mother chooses to reside. Kathy argues for unrestricted visitation with her child and specifically complains about the provision in the implementation order prohibiting Susan Savage's presence during Kathy's visitation with Elijah.
Initially, as a procedural matter regarding the continuing jurisdiction over custody proceedings, we agree that the trial court's ruling based upon possible future developments in Kathy's life is improper. Where a litigant has been subject to the personal jurisdiction of the court in a case where a custody award has been made, jurisdiction will continue as to those matters directly related to the custody and best interest of the child. Parker v. Parker, 382 So.2d 201 (La.App. 2d Cir.1980). Because there must be flexibility in the area of child custody, the law grants courts continuing jurisdiction for modification of prior awards, upon the appropriate showing and according to the best interest of the child. Thus, a court is able to award custody of a child without having to be forever bound by that judgment. By allowing awards of custody to be reopened upon a change in circumstance, the overriding principlethat custody be awarded in the best interest of the childis ensured. See, Dupuy v. Dupuy, 2000-2744 (La.App. 1st Cir.3/28/01), ___ So.2d ___, 2001 WL 293988. The trial court's attempt *320 to control Kathy's harmful influence over the child and her imposition upon her mother should not take the form of an "automatic non-judicial change" in the sharing of custody as included in the present judgment.
Second, the finding of the risk of "substantial harm" by the court and the termination of Kathy's parental right to custody, which has not been appealed by Kathy, allows the court in these proceedings to severely restrict, if not exclude, Kathy's visitation rights. We therefore agree with the Streets that the trial court's concern about Kathy's continuing substantial harm and influence over Elijah should have been addressed by the imposition of more limited visitation. We therefore modify the judgment to require that Kathy's right of visitation be supervised by Lynn's presence with Elijah at all times. While we are likewise concerned about Kathy's history of drug and alcohol abuse and its effects, any further restriction upon Kathy's visitation, including time limits in the event she returns to West Monroe, continues to abuse drugs and avail herself of her mother's resources, could be the subject of future supervision by the trial court. Clearly, Lynn's custodial rights are subject to her ability to protect Elijah from the risk of "substantial harm" posed by Kathy's delinquency if that delinquency continues in the future. Finally, in view of our amendment to the judgment requiring Kathy's contact with Elijah to be supervised, the implementation order's restraint on Susan Savage, which Kathy contests, is no longer required and is deleted from the judgment.

Costs
Both the Streets and Lynn assign as error the trial court's failure to allocate costs. Lynn urges that since the trial court rejected the Streets' original demand for Elijah's sole custody, costs should be assessed against them in accordance with La. C.C.P. art. 1920. Alternatively, Lynn argues that each party should bear its own trial court costs and that costs of the appeal should be assessed against the Streets. The Streets argue that the trial court should have either assessed costs to Kathy and Lynn or allocated the costs between the parties, including costs associated with Dr. Stephenson.
The allocation of court costs is a matter which is subject to the discretion of the trial court. La. C.C.P. art. 1920; Ball v. Ball, 32,852 (La.App. 2d Cir.3/1/00), 757 So.2d 824. When costs are taxed, expert witness fees are implicitly included. Bentley v. Industrial Fire Protection, Inc., 350 So.2d 982 (La.App. 2d Cir.1977). An expert is entitled to reasonable compensation for his appearance in court and for preparatory work done by him. See, La. R.S. 13:3666; Richard v. Wal-Mart Stores, Inc., 29,926 (La.App. 2d Cir.10/31/97), 702 So.2d 79, writ denied, 97-3002 (La.2/6/98), 709 So.2d 744.
After an order of appeal is granted, the jurisdiction of the trial court is divested as to all matters reviewable on appeal; however, the trial court retains jurisdiction over those matters not reviewable under the appeal, including the right to set and tax costs and expert witness fees. La. C.C.P. art. 2088. The allocation of court costs among the parties is a matter which is subject to the discretion of the trial court and its allocation of those costs will not be disturbed absent evidence of an abuse of that discretion. Mills v. Wilkerson, supra; Jackson v. Lare, 34,124 (La. App. 2d Cir.11/1/00), 779 So.2d 808; McConathy v. McConathy, 25,542 (La.App. 2d Cir.2/23/94), 632 So.2d 1200, writ denied, 94-0750 (La.5/6/94), 637 So.2d 1052.
*321 The judgment prepared by the parties in the instant case is silent as to the allocation of court costs, including the expert witness fees. While the record reveals that the trial court qualified three witnesses as experts in the field of psychology, the record does not contain any other information concerning these fees which may be includable as court costs. Under these circumstances, we remand this case to the trial court to determine the appropriate allocation of costs.

Conclusion
For the foregoing reasons, the judgment of joint custody in favor of Beryl Lynn May and the Streets, is affirmed in part, with that provision in the ruling conditioning the custody sharing arrangement upon the residence of Kathy May DeCelle overruled and deleted from the custody order. The provisions in the joint custody implementation order concerning Kathy May DeCelle are amended to require that Kathy's right of visitation with Elijah be supervised by Lynn's presence at all times. The additional provision of the implementation order concerning Susan Savage is deleted in view of Kathy's supervised visitation imposed by this ruling. The case is remanded to the trial court for the assessment of court costs. Costs of appeal shall be borne fifty percent by the Streets and fifty percent by Lynn May.
AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.
NOTES
[1] We will refer to the Streets as grandparents even though questions concerning Darren's paternity have been raised. As noted below, their status as grandparents or step-grandparents is not material to the trial court's ruling or to this appeal.
[2] The Joint Custody Implementation Order specifically provided that Lynn would have physical custody of Elijah from five days before the beginning of each school year until five days after the last day of school, during which time the Streets would have visitation during alternating weekends from Friday evening until Sunday evening and additional periods of visitation during the Thanksgiving, Christmas and Easter vacation holidays from school and mid-term break from school. During summer vacation from school, the Streets would have physical custody subject to Lynn's visitation during alternating weekends and on summer holidays.