# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 05-1015


**THOMAS A. KNISELY**

**VERSUS**

**PATRICIA KNISELY**


*************

APPEAL FROM THE
SIXTEENTH JUDICIAL DISTRICT COURT,
PARISH OF IBERIA, NO. 84731-G,
HONORABLE CHARLES L. PORTER, DISTRICT JUDGE

*************

**JIMMIE C. PETERS**
**JUDGE**

*************

Court composed of Oswald A. Decuir, Jimmie C. Peters, and Elizabeth A. Pickett, Judges.


**AFFIRMED.**


**Edward P. Landry**
**Landry, Watkins, Repaske & Breaux**
**Post Office Drawer 12040**
**New Iberia, LA  70562-2040**
**(337) 364-7626**
**COUNSEL FOR APPELLANT:**
    **Mary Delores Byrley Knisely**

**Natalie B. Broussard**
**Attorney at Law**
**203 West Main Street, Suite 200**
**New Iberia, LA  70560**
**(337) 365-9000**
**COUNSEL FOR APPELLEE:**
    **Regina Vice Knisely**

PETERS, J.

The issue in this custody appeal is whether the trial court erred in granting sole custody of eight-year-old Karl Thomas Knisely (Karl) to his stepmother, Regina Knisely (Regina). Karl's paternal grandmother, Mary Delores Knisely (Mary), appeals this judgment, asserting that the trial court erred in not awarding her custody. For the following reasons, we affirm the trial court judgment in all respects.

**DISCUSSION OF THE RECORD**

Karl's parents are Thomas (Tom) and Patricia Knisely (Patricia), who were married on August 4, 1995, and thereafter established their marital domicile in New Iberia, Louisiana. Patricia gave birth to Karl on June 17, 1996, and, on August 2 of that same year, Tom sued Patricia for divorce. On August 20, 1996, the trial court awarded custody of Karl to Tom. After his physical separation from Patricia, and because he worked offshore, Tom took his infant son to Lake Charles and placed him under Mary's care. In the May 6, 1997 divorce judgment, the trial court awarded Karl's continued custody to Tom.

In February of 1998, Tom and Regina began living together, and Karl, who was then twenty months old, returned to New Iberia to reside with them and Regina's two daughters by a previous marriage. Sometime thereafter, Tom and Regina married.

In 2002, Tom became terminally ill. On December 29, 2003, he died, but not without taking steps to ensure Karl's care after his death. After his niece, Zoe Ange, who lived in St. Martinville, Iberia Parish, declined his request to care for Karl after his death, in April 2003, he executed a will designating his sister, Deborah Sue Knisely, as Karl's tutrix. However, on December 10, 2003, Mary drove to New Iberia and brought Tom to Lake Charles, where he executed another will designating her as tutrix. Within a few days after executing the will, Tom lapsed into a coma, and,

before the end of the month, he died. Despite being named as testamentary tutrix, Mary never filed tutorship proceedings.

The current litigation began in 2004 when Regina filed a rule seeking a judgment designating her as Karl's sole custodian. Mary countered with a rule asking that she be given sole custody, and the matter went to trial on that single issue on July 9, 2004. At the time of trial, Karl was eight years old and had resided continuously with Regina since his father's death.

Twelve witnesses including the two litigants testified at the custody hearing. Included among the witnesses was Patricia, who evidently continued to live in New Iberia after Tom divorced her. She acknowledge in her testimony that she never had a parental relationship with Karl and that, when she saw him approximately two weeks before the custody hearing, it was the first time she had seen him since he was six weeks old. Regarding whom she would prefer as a custodian for her son, she named Mary. In doing so, she explained that she expressed this preference only because she did not know Regina.

Other witnesses included school personnel from Center Street Elementary School in New Iberia, where Karl goes to school, and a number of family members. After hearing the testimony of all of these witnesses as well as that of the litigants, the trial court took the matter under advisement. On August 5, 2004, the trial court rendered written reasons for judgment awarding custody of Karl to Regina and awarding Mary specific visitation rights. The trial court signed a judgment to this effect in October of 2004, and Mary timely appealed.

Regina was fifty years old at the time of trial and had been employed at Office Mart for over twenty years. She testified that she began raising Karl when he was

2

still in diapers and that she loved him and considered him her own child. During her testimony, she produced numerous pictures she had taken of Karl, depicting initial events in his life. She testified that she had kept these because they represented memories of his growing up. Regina expressed concern that if the custody of Karl were given to Mary, he would have to leave the only home and family he has known as well as his school, baseball team, cub scout troop, and neighborhood and school friends.

Karl had just completed the second grade at the time of the custody hearing. In kindergarten and the first grade, Karl had some discipline problems, but these seemed to resolve themselves by the second grade. He was an honor student, and the teachers expressed affection for him. However, the school authorities acknowledged that, because Karl suffers from Attention Deficit Hyperactivity Disorder, he does not adapt well to change. With regard to home support, the school authorities all acknowledged that Regina has always been available at school, bringing him things and otherwise taking care of his school needs both before and after Tom's death. Because none of the school personnel had ever met Mary, they had no comment concerning her abilities. However, several of the witnesses, including the school principal and the school counselor, testified that Karl had confided in them that he wanted to continue to reside with Regina, that he did not want to leave his friends and sisters, and that he did not want to live with his grandmother. Even a number of Mary's witnesses testified that Karl was well cared for in Regina's custody.

Mary was seventy-one years old at the time of trial, suffered from a heart condition, and lived on a retirement income and social security benefits. She basically suggested that she should be granted custody because of her blood

3

relationship and because of Tom's expressions in his will. She further asserted that most of Karl's blood relations reside in the Lake Charles area, and not in New Iberia. Specifically, Karl's half brother and aunt reside in the town of Iowa a few miles from Lake Charles.

In her sole assignment of error on appeal, Mary asserts that the trial court erred in awarding Regina custody of Karl. She seeks reversal of that judgment and an award of custody to herself.

## OPINION

Louisiana Civil Code Article 134 sets forth the factors to be considered in determining the child's best interest and provides as follows:

> The court shall consider all relevant factors in determining the best interest of the child. Such factors may include:
>
> (1) The love, affection, and other emotional ties between each party and the child.
>
> (2) The capacity and disposition of each party to give the child love, affection, and spiritual guidance and to continue the education and rearing of the child.
>
> (3) The capacity and disposition of each party to provide the child with food, clothing, medical care, and other material needs.
>
> (4) The length of time the child has lived in a stable, adequate environment, and the desirability of maintaining continuity of that environment.
>
> (5) The permanence, as a family unit, of the existing or proposed custodial home or homes.
>
> (6) The moral fitness of each party, insofar as it affects the welfare of the child.
>
> (7) The mental and physical health of each party.
>
> (8) The home, school, and community history of the child.
>
> (9) The reasonable preference of the child, if the court deems the child to be of sufficient age to express a preference.

(10) The willingness and ability of each party to facilitate and encourage a close and continuing relationship between the child and the other party.

(11) The distance between the respective residences of the parties.

(12) The responsibility for the care and rearing of the child previously exercised by each party.

In its written reasons for judgment, the trial court specifically considered these factors and concluded that nearly all were relevant.

In considering the factors, the trial court noted that both parties had demonstrated love and affection for and emotional ties to Karl; that both had the capacity and disposition to give Karl love, affection, spiritual guidance, and educational support; and that both had the financial resources and disposition to provide food, clothing, and medical care and to provide for other physical needs. At the same time, the trial court noted that Karl had resided for almost all of his life in a stable and adequate environment which had effected a permanent family unit between him and Regina, the woman he recognized as the predominant mother-figure in his life.

In reviewing the trial court's decision, we first note that this matter is one addressing custody and not tutorship in that the pleadings filed by both Regina and Mary seek an award of custody. While the concept of tutorship of minor children necessarily involves the responsibility of their custody and care, the ultimate test is the children's best interest in accordance with the factors outlined in La.Civ.Code art. 134. *In the Interest of the Minor Children, S.L.G. and K.A.G.*, 39,704 (La.App. 2 Cir. 3/2/05), 895 So.2d 773. That is to say, custody and tutorship are not necessarily the same thing, and, although the appointment of a custodian and a tutor affect each other, the two proceedings are independent of each other, and each proceeding has

5

its own venue article and requirements. *In the Matter of the Custody of Booty*, 95-0828 (La.App. 1 Cir. 11/9/95), 665 So.2d 444.

Karl's mother has disqualified herself from the natural tutorship available to her by her testimony that she neither seeks nor wants custody of Karl. Therefore, the issue involves a custody award to one of two nonparents. Nonetheless, Mary asserts that she should be considered before Regina because of her blood relationship and her designation as tutrix by will.

With regard to these arguments, we first note that Mary's status as a grandparent does not affect her status as a nonparent for purposes of deciding custody. *See In the Matter of Tuccio*, 95-0302 (La.App. 1 Cir. 11/16/95), 665 So.2d 531. Additionally, we note that Mary has chosen not to seek appointment as Karl's tutrix, and she has every right not to seek the appointment. However, to be considered as having the authority as a tutor appointed by will, the individual so appointed "must be confirmed or appointed by the court, and must qualify for the office as provided by law." La.Civ.Code art. 248. All tutorships have existence only after the appointment of the tutor by a judicial tribunal as provided by law. *In re the Tutorship of Watts*, 96-0073 (La.App. 1 Cir. 9/27/96), 681 So.2d 74. Thus, we reject Mary's argument that she has a preference over Regina because of her blood relationship or appointment by will.

As recognized by the trial court, Karl's best interest is controlling in our resolution of the present litigation. *See* La.Civ.Code art. 131; *Smith v. Tierney*, 04-2482 (La.App. 1 Cir. 2/16/05), 906 So.2d 586; *Street v. May,* 35,589 (La.App. 2 Cir. 12/5/01), 803 So.2d 312. Additionally, custody awards to nonparents are governed by La.Civ.Code art. 133, which provides that, if custody is not to be awarded to either

parent, "the court shall award custody to another person with whom the child has been living in a wholesome and stable environment, or otherwise to any other person able to provide an adequate and stable environment."

The best interest inquiry "is a fact-intensive inquiry requiring the weighing and balancing of factors favoring or opposing custody in the competing parties on the basis of the evidence presented in each case." *Street*, 803 So.2d at 315. Additionally, "[e]ach child custody case must be viewed within its own peculiar set of facts." *Id.* On matters of custody, the trial court's determination is to be given great weight and will be overturned only when there is a clear abuse of discretion. *Thibodeaux v. Thibodeaux*, 00-82 (La.App. 3 Cir. 6/1/00), 768 So.2d 85, *writ denied*, 00-2001 (La. 7/26/00), 766 So.2d 1262.

The trial court's decision in this case was based on what it perceived to be Karl's best interest, and our review of this record reveals no abuse of discretion in the trial court's decision. The evidence is undisputed that Karl has been living in a wholesome and stable environment since his father's death, although it equally establishes that Mary would provide an adequate and stable environment. The trial court carefully weighed the relevant factors and properly determined that Karl's best interest would be served by allowing him to remain with the only mother he has ever known and close to his friends, school, and extended family. Thus, we find no merit in the assignment of error.

## DISPOSITION

For the foregoing reasons, we affirm the trial court judgment awarding Regina Knisely the care, custody, and control of the minor, Karl Thomas Knisely. We assess all cost of this appeal to Mary Delores Knisely.

7

**AFFIRMED.**