STONE, J.
h Tiffany F. Neathery (“Tiffany”), appeals a trial court judgment awarding her and Brian and Martha Aucoin (“the Au-coins”) joint custody of Tiffany’s minor daughter, B.N., and designating the Au-coins domiciliary parents. For the reasons stated herein, we affirm.
*252 FACTS
Timothy Neathery, Sr., (“Timothy”) and Tiffany are the legal parents of 12-year-old B.N.[1] A child custody judgment was rendered on April 18, 2006, awarding Tiffany sole custody of B.N., and further denying Timothy any visitation rights. Despite the child custody judgment, B.N. resided with the Aucoins from her birth on November 25, 2004, until she was approximately 9 years old.[2] The record indicates the Aucoins assumed the role of B.N.’s parents and were her primary caretakers.
Between the summer and fall of 2014, Martha informed B.N, that when she turned 12 years old, B.N. could decide if she wanted to live with Tiffany or the Aucoins. B.N. subsequently repeated this statement to Tiffany. Apparently, miffed with Martha’s statement, Tiffany insisted B.N. live with her exclusively, and eventually terminated all contact between B.N. and the Aucoins.
On February 2, 2015, the Aucoins filed a rule for custody requesting sole custody of B.N.[3] To assist the trial court in a visitation determination, the trial court ordered the parties undergo a custody evaluation with licensed | ¡^professional counselor, Donna George (“George”) at the Wellspring Counseling & Family Development Center. The custody evaluation required Tiffany and the Aucoins to submit to psychological evaluations with Dr. Bobby Stephenson (“Dr. Stephenson”).
Upon consideration of George’s custody evaluation, a hearing officer recommended the Aucoins be granted sole custody of B.N. with Tiffany exercising physical eus-tody of B.N. on alternate weekends from 6:00pm Friday until 6:00pm Sunday and at any other times agreed upon by the parties. The trial court signed an interim order adopting the recommendation of the hearing officer.
The trial court issued a final judgment on the matter on August 26, 2016. The trial court granted the Aucoins and Tiffany joint custody of B.N. and designated the Aucoins domiciliary parents. Tiffany was given unsupervised visitation with B.N. every other weekend from the end of school on Friday until the start of school on Monday. Tiffany now appeals.
DISCUSSION
Tiffany alleges the trial court erred in finding substantial harm would result from her having sole custody of B.N. Tiffany argues the trial court did not properly apply La. C.C. art. 138 in determining B.N. should be removed from her and placed in the custody of nonparents.
Louisiana law requires that “the best interest of the child [be] the guiding principle in all child custody litigation.” Street v. May, 35,589 (La.App. 2d Cir. 12/05/01), 803 So.2d 312; Mills v. Wilkerson, 34,694 (La. App. 2d Cir. 03/26/01), 786 So.2d 69, 73; La. C.C. art. 131. Determining the best interest of a child is a fact-intensive inquiry requiring a court to balance the factors supporting or opposing an award of custody to the ^litigating parties based on the evidence presented. May, supra; Warlick v. Warlick, 27,389 (La.App. 2d Cir. 09/29/95), 661 So.2d 706. A court must *253 consider all relevant factors in determining the best interest of the child and is provided with guiding factors to assist in its consideration; however, the list is not exhaustive. La. C.C. art. 134. Turner v. Turner, 84-0557 (La. 1984), 455 So.2d 1374. Every child custody case is to be viewed on its own peculiar set of facts and the relationships involved, with the paramount goal of reaching a decision which is in the best interest of the child. Pender v. Pender, 38,649 (La.App. 2d Cir. 05/12/04), 890 So.2d 1.
Where an award of joint or sole custody to either parent would result in substantial harm to the child, the court shall award custody to another person with whom the child has been living in a wholesome and stable environment or otherwise to any other person who is able to provide an adequate and stable environment for the child. La. C.C. art. 133.
Substantial harm under art. 133 includes parental unfitness, neglect, abuse, abandonment of rights, and is broad enough to include “any other circumstances, such as prolonged separation of the child from its natural parents, that would cause the child to suffer substantial harm.” Mills v. Wilkerson, supra; Hughes v. McKenzie, 20,322 (La. App. 2d Cir. 02/22/89), 539 So.2d 965.
In custody disputes between a parent and a nonparent, the parent enjoys the paramount right to custody and may be deprived of this right only for compelling reasons. Street v. May, supra; Mills v. Wilkerson, supra. At an initial custody contest between a parent and a nonparent, the burden of proof is on the nonparent to show that granting custody to the parent would be detrimental to the child, and that the best interest of the child requires an Laward of custody to the nonparent. La. C.C. art. 133, Comment (b); Martin v. Dupont, supra; Bracy v. Bracy, 32,841 (La.App. 2d Cir. 10/27/99), 743 So.2d 930; Tennessee v. Campbell, 28,823 (La.App. 2d Cir. 10/30/96), 682 So.2d 1274.
The trial court is in the best position to determine the best interest of the child, and findings of fact in custody disputes will not be set aside on appeal unless they are manifestly erroneous or clearly wrong. Street v. May, supra.
Testimony at trial revealed Tiffany is the mother of eight children, including B.N. Two of the children, a 4-year-old set of twins, reside with Tiffany part-time in a poorly conditioned mobile home and part-time with Tiffany’s mother. Tiffany’s 18-year-old daughter resides with her boyfriend part-time and with Tiffany part-time. The 18-year-old is a senior in high school but has previously had to repeat two grades. Tiffany’s four older children were primarily raised by someone other than Tiffany, and three have dropped out of school without receiving a diploma or GED. Those three children also have criminal arrest records.
When she was approximately 3 to 6 months old, B.N. began staying with the Aucoins from Tuesday to Saturday while Tiffany worked overnight. Tiffany did not provide the Aucoins with any assistance. The Aucoins provided B.N. with all her needs including food and clothing. The Au-coins also provided B.N. with her own room and maintained all her medical and dental appointments. Once B.N. started school, Tiffany gave the Aucoins authority to interact directly with the school on any matters concerning B.N.
The testimony further revealed B.N. suffers from a receptive learning disorder that affects her ability to read and comprehend. To aid with B.N.’s ^learning disorder, the Aucoins paid for B.N. to attend Sylvan Learning Center as well as speech and language therapy at the University of *254 Louisiana in Monroe (“ULM”). The Au-coins also involved B.N. in extracurricular activities, including travel softball. The Au-coins transported B.N. to all her practices and games.
B.N.’s school transcripts admitted into evidence revealed she was primarily an A and B student when she predominantly lived with the Aucoins and attended ULM. However, after Tiffany severed all ties between the Aucoins and B.N. B.N.’s grades severely declined to Ds and Fs. Tiffany admitted that B.N.’s grades have substantially dropped since she has been in Tiffany’s custody, but claims she will take steps in the future to ensure B.N. gets tutoring and goes to college. She conceded that ULM was beneficial to B.N. and helped with her learning disorder, but that she discontinued B.N.’s therapy at ULM because B.N. hated it and did not want to return.
Tiffany testified she currently works overnight and B.N. and her 4 year old twins stay with her mother from Tuesday through Saturday while she is working. According to Tiffany, her oldest daughter who is 28 years old, also lives with her mother. Neither the oldest daughter nor the grandmother have a driver’s license and would be legally prohibited from driving the children anywhere if necessitous circumstances arise. Tiffany also informed the trial court that she wanted to cut the Aucoins completely out of B.N.’s life.
B.N. testified that she was mad at the Aucoins for trying to take her from Tiffany. However, B.N. confessed that Tiffany told her to testify that she wanted to live with Tiffany. According to B.N., Tiffany told her that if |fishe went to live with the Aucoins, she would never see Tiffany or B.N.’s brothers and sisters again.
George testified that B.N. believes Tiffany’s willingness to give love and affection is conditional, is seemingly based on whether B.N. is acting in a way that makes Tiffany happy, and that B.N. feels loved as long as she is doing what Tiffany wants her to do. George believes B.N. loves Tiffany very much and is reluctant to do or say anything about Tiffany that would be viewed in a negative light or that would be upsetting to Tiffany. George further testified that during her one on one session with B.N., the child stated that Tiffany said she would have to go live with Timothy if she loses custody of her. B.N. also stated she would like to come and live with the Aucoins if Tiffany did not get mad.
George also testified that when she questioned Tiffany about her other children not finishing school, Tiffany dismissed any responsibility by stating it was not her fault because the kids moved out and dropped out of school. George also indicated that Tiffany did not believe her children’s decisions to get in trouble was her fault nor was it a reflection of her parenting.
Based on her sessions and interactions with the parties, George testified it was in B.N.’s best interest to grant the Aucoins and Tiffany joint custody and designating the Aucoins as domiciliary parents subject to Tiffany’s unsupervised visitation.
After considering the testimony of parties and witnesses, the trial court determined the Aucoins presented sufficient evidence to establish substantial harm would result by granting Tiffany sole custody of B.N. The trial court stated Tiffany’s act of terminating B.N.’s relationship with the Aucoins, the most stable and long-term relationship B.N. had in her life, was ^substantially harmful to B.N. Furthermore, the trial court found that Tiffany’s attempt to scare and intimidate B.N. with threats of never seeing her family again or having to go and live with Timothy inflict *255 ed emotional abuse on B.N. According to the trial court, Tiffany’s demonstrated habit of placing her own interests, desires, and feelings ahead of B.N.’s were contrary to B.N.’s best interest.
Additionally, the trial court found that based on Tiffany’s employment and financial situation, it may be difficult for her to spend adequate time with B.N. or provide her with certain things she needs. The trial court also found that Tiffany places little or no, emphasis on furthering B.N.’s education and addressing her special needs with respect to succeeding in school. Specifically, the trial court stated Tiffany “has little or no regard or concern as to whether [B.N.] succeeds in school or not, graduates from high school or not, and certainly little or no interest in where the child attends or receives a college education.” The trial court went on to further state:
The lack of emphasis with respect to educational needs, development, and success is obvious and long-term with respect to how Tiffany Freeman Neath-ery parents her children. Also, she’s advocated her parental responsibility along the way with respect to the other children as evidenced by their living arrangements and who assumed primary responsibility and care for them along the way. There is nothing in the record presented to suggest to the court that the outcome with respect to [B.N.], if left solely in Tiffany’s care and without the involvement of other persons such as the Aucoins, would be any different.”
In weighing the best interest factors enumerated in La. C.C. art. 134, the trial court determined both parties love B.N. and she loves them all however, B.N. seems to have stronger and healthier emotional ties with the Aucoins, and she views the Aucoins as parental figures; the Au-coins have shown the ability and willingness to ensure that B.N. receives the education | Sshe needs and succeeds in school; the Aucoins earn a sufficient income and are able to provide everything for B.N. as they have been doing for years, including clothes, school supplies, healthcare, extracurricular activities, and tutoring; and, the Aucoins are able to provide a more stable, adequate, and permanent living environment and family unit for B.N. Although the trial court did not find Tiffany to be morally unfit as a parent, it did find Tiffany subjected B.N. to emotional abuse. Particularly, the trial court found Tiffany’s conduct of stoking fear and making threats that B.N would be alienated from the family, as well as completely terminating B.N.’s relationship with the Aucoins, to be very disturbing. The trial court found it “deplorable” that Tiffany would wholly dissolve all communication between the Au-coins and B.N. despite the significant role they have played in the first ten years of her life.
After thoroughly reviewing the record, we find the trial court’s decision to grant the Aucoins and Tiffany joint custody is in the best interest of B.N. The Aucoins earn a sufficient income and are able to provide everything for B.N. as they have been doing for years. The Aucoins have borne most of the responsibility for care and rearing of B.N. thus far and are in a better position to make major decisions that affect B.N. Additionally, the Aucoins have shown the ability and willingness to ensure that B.N. receives the education she needs and have the resources to ensure she succeeds in school. Tiffany was clear that she did not want the Aucoins to have any part of B.N.’s life. However, removing B.N. from the relationship that she has grown to love and enjoy with the Aucoins would not be in her best interest. As a result, we find no manifest error in the trial court’s conclusion.
*256 ^CONCLUSION
For the aforementioned reasons, the judgment of the trial court is affirmed. Costs of this appeal are assessed against the appellant, Tiffany F, Neathery. ■
AFFIRMED.

.Tiffany testified that Kelvin Bailey is B.N.'s biological father; however, Kelvin has never taken any action to formally acknowledge or establish his paternity of B.N. Since B.N. is now over the age of 10 years old, any action to establish paternity is preempted pursuant to La. C.C. art. 198.

. Martha Aucoin ("Martha”) is Tiffany's first cousin and B.N.’s second cousin.

. Timothy was served with the rule for custody. He appeared at the first hearing and announced he did not desire to be a party to the action.