NOT DESIGNATED FOR PUBLICATION

STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

NO. 2019 CU 1280

IN THE MATTER OF THE CUSTODY OF L.W.B. AND M.N.B.

Judgment Rendered: **'JUL' 0 6 2020**

* * * * *

On Appeal from
The Family Court
Parish of East Baton Rouge, State of Louisiana
No. 217,539

The Honorable Lisa Woodruff-White, Judge Presiding

* * * * *

Corbett L. Ourso
Hammond, Louisiana

Attorney for Appellant,
J.E.


Lorraine Andresen McCormick
Baton Rouge, Louisiana

Attorney for Appellees,
M.B. and K.B.


* * * * *

BEFORE: WHIPPLE, C.J., GUIDRY AND BURRIS,[1] JJ.

Whipple, C.J. concurs

---

[1]    Judge William J. Burris, retired, is serving *pro tempore* by special appointment of the Louisiana Supreme Court.

**BURRIS, J.**

The biological mother appeals a judgment of the Family Court that overruled exceptions of lack of subject matter jurisdiction, insufficiency of service of process, and no right and no cause of action, and awarded sole custody of her minor children to their paternal grandparents. We affirm.

## FACTS

This suit concerns the custody of L.W.B.,[2] born May 16, 2009, and M.N.B., born January 24, 2014. On May 10, 2019, the children's paternal grandparents, M.B. and K.B., filed a petition with the Family Court for East Baton Rouge Parish, seeking an emergency *ex parte* order of immediate temporary custody, as well as a permanent award of sole custody of the children. The grandparents alleged the children's parents had a history of instability and drug abuse and that the children began living with the grandparents, full time, in 2015. The children's father died in 2017. The children lived with the grandparents until April 2019, when the mother "snatched" them from their respective schools and refused to return them or allow them any contact with the grandparents.

In their petition, the grandparents averred that in 2015, in a previous suit, the Family Court awarded them temporary custody of the children when the father went to prison and the mother entered a drug rehabilitation center. No further judgment was rendered in that suit, as, on the day of the scheduled custody hearing, the grandparents and mother entered into a verbal agreement that the children would live with the grandparents and have visitation with the mother. The grandparents alleged that they thereafter provided for all the children's needs and facilitated visitation with the mother while she lived at the rehabilitation center, then at sober living and transitional living homes. They alleged that this custody arrangement continued

---

[2] The initials of the children, their parents, and their grandparents are used herein pursuant to Uniform Rules – Courts of Appeal, Rule 5-2. *See also* Uniform Rules – Courts of Appeal, Rule 5-1.

2

until 2019. The grandparents averred the mother had no reliable transportation or permanent housing, and that her abrupt removal of the children from the grandparents' custody would cause the children immediate harm.

The grandparents further alleged that in November 2018, on the mother's motion, the Family Court signed an *ex parte* order dismissing the prior proceeding initiated by the grandparents as abandoned. They alleged the mother was financially motivated in seeking the order, having been contacted in relation to the deceased father's pending civil suit for damages and appointed tutrix for the children in that suit.

A hearing on the grandparents' *ex parte* custody request was held the same day the petition was filed. The grandparents appeared with their attorney. The mother did not appear, but attorney Susan Raborn appeared as her representative. Ms. Raborn contended the Family Court lacked jurisdiction and was not a court of proper venue, arguing there was no presumption of paternity since the mother and father were not married, and further that the mother and the children did not live in Louisiana. With permission of the court, Ms. Raborn telephoned the mother, then verified on the record that the mother waived her presence at the hearing. The court heard testimony and questioned the attorneys about the procedural history involved, including the order of abandonment in the prior suit. Based on the testimony and arguments, the court awarded immediate temporary custody of the children to the grandparents pending a full hearing on the matter, ordered that the children be immediately returned to the grandparents' custody and re-enrolled in their previous schools, and further ordered that the children remain in East Baton Rouge Parish. The court orally notified the grandparents and all counsel that it was setting a full hearing for May 31, 2019.

After instructing the parties to retrieve copies of the court's orders from the clerk's office and adjourning the hearing, the hearing resumed for the court to

address whether a civil warrant for the return of the children was needed. Ms. Raborn assured the court the children would be returned, but said arrangements would need to be made and that she would have to talk to her client to see if the children could be returned before school on Monday. In response to the court's questioning, Ms. Raborn advised that the children were in Mississippi, but that her client did not want their exact location divulged. After discussion among the court and counsel, Ms. Raborn agreed that the mother would return the children to the grandparents' house on Sunday at 5:00 p.m.

The children were not returned to the grandparents as ordered. At an emergency hearing on May 14, 2019, Ms. Raborn explained that she appeared at the prior hearing after receiving an email from the grandparents' attorney that did not reference a docket number. She argued she was attorney of record in the prior case that was abandoned but was not attorney of record in this new suit bearing a different docket number. Ms. Raborn further claimed that since the children were in Mississippi and the grandparents were not the children's parents, no emergency temporary custody order could be issued under Louisiana Revised Statute 13:1816. The court pointed out that it relied on Ms. Raborn's assurances that the mother would comply with its order when it decided not to force Ms. Raborn to reveal the mother's address and issue a civil warrant. When asked why the children were not returned, Ms. Raborn referenced thunderstorms during the weekend.

After counsel for the grandparents objected to Ms. Raborn's claim that she was not representing the mother in this case after advocating for the mother at the previous hearing, the court asked Ms. Raborn for the mother's address. Ms. Raborn claimed she did not know the address or the mother's location. The court then demanded the mother's phone number, which Ms. Raborn denied knowing. The court next directed Ms. Raborn to provide it with the number she called during the

4

prior hearing to ask the mother about waiving her presence, which Ms. Raborn provided.

As the court questioned her, Ms. Raborn protested that the court was denying her client's constitutional rights to due process and to be heard. When the court asked if she understood the children had to be returned to the grandparents at 5:00 p.m. on Sunday, Ms. Raborn protested that the Family Court did not have jurisdiction over the children. Ms. Raborn admitted that at the previous hearing, she represented that the mother would return the children as ordered. When the court again asked why the children were not returned, Ms. Raborn answered, "[b]ecause several things," then referenced the weekend's inclement weather.

The court instructed Ms. Raborn to call her client and obtain her address. Ms. Raborn stated the mother did not want to reveal her address. The record reflects an ensuing disagreement between counsel as to whether the court made any statements off the record about where the children would attend school, with the court rebuking Ms. Raborn for making untruthful representations. Ms. Raborn argued, "You cannot terminate my parent - - my client's parental rights!" When the court specifically denied doing so, Ms. Raborn argued that the children's education was her client's right, and rulings by the court in that regard amounted to a termination of her client's rights.

The Family Court held Ms. Raborn in direct contempt of court for continuing to interrupt but gave her the opportunity to purge herself by providing the address needed for execution of the civil warrant to return the children. At the direction of the court, Ms. Raborn telephoned the mother in open court. The court stated it wanted the mother to provide her address and instructed Ms. Raborn to put her client on speaker. Ms. Raborn then informed the court that the mother disconnected the call.

Ms. Raborn continued to deny knowing the mother's address and represented that Mississippi's Office of Child Services, as well as two Mississippi judges had been in contact regarding the children. Ms. Raborn informed the court that the mother had new counsel, but claimed not to know their identity. When questioned about statements she made at the prior hearing about the mother's location, Ms. Raborn told the court that the mother and children were with a great aunt and great uncle, but that she did not know their names or address.

The court questioned Ms. Raborn about how the mother retained her services and Ms. Raborn stated she was retained in November because the grandparents were not allowing the mother to see the children on the weekends. When asked how Ms. Raborn came to represent the mother on the *ex parte* custody request, Ms. Raborn indicated there was no arrangement in that regard. As opposing counsel urged the trial court to take Ms. Raborn into custody for contempt, Ms. Raborn again contacted the mother by cell phone. After confirming her identity, the mother disconnected the call. Ms. Raborn then contacted the mother's brother, who provided the mother's address.

After verifying the mother's address, the Family Court signed a warrant directing the Sheriff of Monroe County, Mississippi, to return the children to the grandparents. The court's order directed service on the mother through her attorney, Ms. Raborn, and noted service in open court on May 14, 2019. During the same May 14 hearing, the court ordered Ms. Raborn to pay a $100 fine for the finding of contempt, noting there was not sufficient evidence to hold Ms. Raborn in direct contempt for obstruction of the court's orders.

The Family Court took up the case again on May 31, as scheduled at the first hearing, and was informed the children had not been returned to the grandparents as ordered. Ms. Raborn explained that the Mississippi Sheriff's Office denied enforcement of the warrant for return of the children. Counsel for the grandparents

6

stated she spoke to a Mississippi county attorney, who explained the procedure necessary for enforcement of the order.

Ms. Raborn stated she was making only "a limited appearance" for the mother, maintaining she was attorney of record only in the prior, abandoned suit, but had not been hired to represent the mother in this suit. Ms. Raborn directed the court's attention to exceptions she filed in this suit on the mother's behalf. The trial court allowed arguments on the exceptions over the grandparents' objection that the exceptions were being considered for a third time.

On behalf of the mother, Ms. Raborn argued the Family Court lacked jurisdiction, contending Louisiana was not the children's home state under the Uniform Child Custody Jurisdiction Enforcement Act (UCCJEA). When the court asked about its 2015 order and exercise of jurisdiction in the prior suit, Ms. Raborn responded that the temporary order expired on its face after thirty days, there was no formal order, and, thereafter, the case was abandoned. Ms. Raborn further denied that there was any emergency situation that prompted this suit, arguing the mother merely moved her children to Mississippi.

Ms. Raborn next argued the grandparents have no right of action and were unjustified in filing their petition. She denied the grandparents' claim of having physical custody of the children since 2015, arguing "if they had any sort of anything, it was some kind of a joint back and forward thing." Ms. Raborn further argued the Mississippi Supreme Court had held that grandparents who helped raise their grandchildren while the parents were going through hard times could not later hold that against the parents and try to take custody. Ms. Raborn claimed the mother had tested negative for drugs for the past four and a half years and, arguing evidence from another state was allowed under the UCCJEA, stated she faxed the court a negative drug test report for the mother from a Mississippi laboratory. The court indicated it did not receive *ex parte* evidence.

7

Ms. Raborn then argued the mother had not been properly served and had been denied due process. In doing so, Ms. Raborn again indicated she was not the mother's attorney of record in this suit, stating she did not even practice family law. Ms. Raborn represented that she appeared at the first hearing only after receiving an email from opposing counsel, which stated there was a hearing, but did not include any referential docket number. She claimed to have then been misinformed by the clerk of court's office that the hearing was in the abandoned suit. Ms. Raborn further contested the statements on the court's printed orders, which indicated service on the mother was effected through service on Ms. Raborn in open court.

In opposition, the grandparents' counsel noted that at the first emergency hearing, the number for this suit was identified when the docket was called, and Ms. Raborn thereafter made her appearance as attorney for the mother and advocated on the mother's behalf. The grandparents' counsel maintained the Family Court did have jurisdiction, citing the court's 2015 exercise of jurisdiction over the same children and parties. Counsel contended Louisiana was the home state under the UCCJEA, because the children were living in Louisiana within six months of the petition being filed. Counsel further disputed the claim that service on the mother through Ms. Raborn was improper. Counsel argued the grandparents had a right of action because they have had physical custody of the children. Counsel further argued the grandparents stated a cause of action because the children were removed from their schools, community, and friends, noting the court's orders were being continuously disregarded and disobeyed.

The Family Court overruled the exceptions of lack of subject matter jurisdiction, lack of service of process, and no right of action. The court noted it signed an order enrolling Ms. Raborn as counsel of record for the mother in this suit and rejected Ms. Raborn's argument that she only represented the mother in the prior suit. The court stated it would defer ruling on the exception of no cause of action

8

until all testimony was presented. Ms. Raborn objected to the hearing proceeding, again indicating she did not represent the mother in this suit. When the court indicated the hearing would proceed, Ms. Raborn left the courtroom.

Counsel for the grandparents introduced the entire record into evidence, then called witnesses, including L.W.B.'s fourth grade teacher, who was present when the mother picked him up from school before taking him to Mississippi; the director of the church preschool M.N.B. attended, who was present when the mother picked her up before taking her to Mississippi; the executive pastor of the church where the preschool was located, who communicated with the mother and sought legal advice regarding the mother's representations regarding tutorship and custody; the mother's roommate for the preceding two years at a sober living complex; and the children's cousin, who lived with the grandparents for a number of years. The grandparents also testified.

After hearing the testimony and reviewing the evidence presented, the Family Court overruled the mother's exceptions and awarded custody of the children to the grandparents. In oral reasons, the court stated it believed the children were in danger while in their mother's custody, citing her history of substance abuse, failure to take advantage of and complete treatment programs, and the roommate's credible testimony about the mother's care of and inattentiveness to the children. The court ordered that the children have no physical contact with the mother, stating the mother was a flight risk, and further observing that the evidence indicated the mother's attorney assisted in secreting the children. The court ordered that the mother undergo hair and urine drug screens before having any communication with the children.

The Family Court signed a judgment reflecting its oral ruling on June 5, 2019. Ms. Raborn, again claiming that she was not attorney of record for the mother in this suit, filed an objection to the judgment's form and substance. Ms. Raborn

additionally filed a memorandum addressing her attempt to proffer documents in support of the exceptions, with those documents attached. Represented by new counsel, the mother now appeals, challenging "the constitutionality of terminating all parental rights of the sole surviving parent of two minor children who is their appointed Natural Tutor and Legal Tutor . . . without due process."

## JURISCTION AND RIGHT OF ACTION

The mother contends the Family Court erred in assuming jurisdiction over this suit. She argues that Louisiana Code of Civil Procedure article 3945, which the grandparents cited in their petition, is procedurally inappropriate and cannot be used by the grandparents to invoke the Family Court's jurisdiction. She further argues that since the children's only living parent resides in Mississippi, Louisiana is not the home state of the children for purposes of the UCCJEA.

Subject matter jurisdiction is the legal power and authority of a court to hear and determine an action or proceeding involving the legal relations of the parties, and to grant the relief to which they are entitled. La. Code Civ. Pro. arts. 1 and 2. A judgment rendered by a court without subject matter jurisdiction is an absolute nullity, which may be recognized at any time. La. Code Civ. Pro. art. 2002.

In general, Louisiana courts are vested with subject matter jurisdiction to hear custody matters involving minors domiciled or in Louisiana. La. Code Civ. Pro. art. 10A(5). The Family Court is a court of limited jurisdiction, vested with the exclusive authority to determine custody matters for East Baton Rouge Parish. La. R.S. 13:1401; *see also Caballero v. Caballero*, 15-2039 (La. 5/13/16), 198 So. 3d 1163, 1167. Custody and tutorship are independent actions. *Matter of Custody of Booty*, 95-0828 (La. App. 1 Cir. 11/9/95), 665 So. 2d 444, 448. Since the Family Court is vested with exclusive jurisdiction over custody matters, the mother is legally incorrect in suggesting on appeal that if any Louisiana court has jurisdiction it is the Nineteenth Judicial District Court. *See Succession of Crute v. Crute*, 16-0836 (La.

10

App. 1 Cir. 8/30/17), 226 So. 3d 1161, 1169 (recognizing that the legislature's exclusive grant of jurisdiction to the Family Court divested the Nineteenth Judicial District Court of jurisdiction).

Although a court has subject matter jurisdiction over child custody matters, it may be required to decline the exercise of jurisdiction based on limitations imposed by the UCCJEA, which is codified as Louisiana Revised Statutes 13:1801 *et seq.* *See Amin v. Bakhaty*, 01-1967 (La. 10/16/01), 798 So. 2d 75, 80 (applying the UCCJA, which preceded, but is substantially similar to the UCCJEA); *Nezat v. Guzman*, 10-1833, 2011WL2616830, p. 3 (La. App. 1 Cir. 5/6/11). Louisiana Revised Statutes 13:1813 provides:

> A. Except as otherwise provided in R.S. 13:1816,[3] a court of this state has jurisdiction to make an initial child custody determination only if:
>
> (1) This state is the home state of the child on the date of the commencement of the proceeding, or was the home state of the child within six months before the commencement of the proceeding and the child is absent from this state but a parent or person acting as a parent continues to live in this state, or had been the child's home state within twelve months before commencement of the proceeding and the child is absent from the state because he was required to leave or was evacuated due to an emergency or disaster declared under the provisions of R.S. 29:721 et seq., or declared by federal authority, and for an unforeseen reason resulting from the effects of such emergency or disaster was unable to return to this state for an extended period of time.
>
> (2) A court of another state does not have jurisdiction or a court of the home state of the child has declined to exercise jurisdiction on the ground that this state is the more appropriate forum under R.S. 13:1819 or 1820; and
>
> (a) The child and the child's parents, or the child and at least one parent or a person acting as a parent, have a significant connection with this state other than mere physical presence.
>
> (b) Substantial evidence is available in this state concerning the child's care, protection, training, and personal relationships.
>
> (3) All courts having jurisdiction have declined to exercise jurisdiction on the ground that a court of this state is the more appropriate forum to determine the custody of the child under R.S. 13:1819 or 1820; or

---

[3]      Section 1816 addresses instances in which Louisiana courts are vested with temporary emergency jurisdiction.

(4) No court of any other state would have jurisdiction under the criteria specified in Paragraph (1), (2), or (3) of this Subsection.

B. Subsection A of this Section is the exclusive jurisdictional basis for making a child custody determination by a court of this state.

C. Physical presence of, or personal jurisdiction over, a party or a child is not necessary or sufficient to make a child custody determination.

For purposes of the UCCJEA, "home state" is defined as "the state in which a child lived with a parent or a person acting as a parent for at least six consecutive months immediately before the commencement of a child custody proceeding." La. R.S. 13:1802(7)(a).

The testimony adduced at the hearing establishes Louisiana is the home state of the children. The grandparents' undisputed testimony established the mother agreed in 2015 that the grandparents would have physical custody of the children. The testimony further established that pursuant to that agreement, the children lived with the grandparents at their home in Louisiana until April 2019. This custody proceeding was instituted less than a month later. The mother's arguments that the home state of the children is Mississippi are wholly unsupported by the record.

Satisfied the Family Court had the power and authority to decide custody of the children, we turn to the mother's primary argument under this assignment of error – that the grandparents could not rely on Article 3945 to invoke the jurisdiction of the Family Court. Although framed in terms of jurisdiction, the argument raises the issue of whether the grandparents had a right of action to seek relief under Article 3945. *See Nicholas v. Allstate Ins. Co.*, 99-2522 (La. 8/31/00), 765 So. 2d 1017, 1022-23 (recognizing that appellate courts may consider arguments on appeal not specifically raised as assignments of error); *see also* La. Code Civ. Pro. art. 927B (authorizing courts to *sua sponte* raise the exception of no right of action).

The function of an exception of no right of action is to determine whether the plaintiffs belong to the class of persons to whom the law grants the cause of action

12

asserted in the suit. *Eagle Pipe & Supply, Inc. v. Amerada Hess Corporation*, 10-2267 (La. 10/25/11), 79 So. 3d 246, 255; *see also* La. Code Civ. Pro. arts. 927A(6) and 1034. The exception assumes that the cause of action asserted is valid and tests whether the plaintiffs have an interest in judicially enforcing it. *Succession of Dean*, 17-0155 (La. App. 1 Cir. 3/29/18), 247 So. 3d 746, 760, *writ denied*, 18-00679 (La. 9/14/18) 252 So. 3d 479. Whether a plaintiff has a right of action is a question of law and is reviewed *de novo* on appeal. *Eagle Pipe and Supply, Inc.*, 79 So. 3d at 256. However, when evidence is introduced to support or controvert an exception of no right of action, factual findings are reviewed under the manifest error standard. *State ex rel. Caldwell v. Molina Healthcare, Inc.*, 18-1768 (La. 5/8/19), 283 So. 3d 472, 477.

The mother contends the grandparents had no right to seek an emergency *ex parte* order of temporary custody pursuant to Article 3945. She argues that article is found in Code of Civil Procedure Book VII, "Special Proceedings," in Title IV, "Divorce and Annulment of Marriage," and therefore applies only to custody matters incidental to divorce or annulment of marriage. She argues that since there is no divorce or annulment involved here, the grandparents could not rely on the article to invoke the jurisdiction of the Family Court. The mother contends the grandparents' reliance on Article 3945 in the previously filed action is immaterial to the question of jurisdiction in this suit.

The mother's argument focuses on the grandparents' right of action (and the Family Court's jurisdiction) relative to the *ex parte* temporary custody order. However, in their petition, the grandparents sought both emergency *ex parte* temporary custody pursuant to Article 3945, and permanent sole custody of the children. Although the Family Court granted temporary custody to the grandparents in May of 2019, the children were not returned to the grandparents pursuant to that order and remained with the mother pending the evidentiary hearing on the

13

grandparents' request for sole custody. It is the June 5, 2019 judgment that awarded the grandparents custody that is the subject of this appeal; therefore, the mother's arguments regarding the basis for the temporary custody award are moot.

On appeal, the mother does not challenge the grandparents' right to seek permanent custody of the children. We note, however, that Louisiana Civil Code article 133 governs custody disputes between a parent and non-parent, providing:

> If an award of joint custody or of sole custody to either parent would result in substantial harm to the child, the court shall award custody to another person with whom the child has been living in a wholesome and stable environment, or otherwise to any other person able to provide an adequate and stable environment.

Further, Article 133 has been applied in custody actions instituted by non-parents, thereby implicitly recognizing a non-parent's right of action to seek custody. *E.g.*, *Smith v. Tierney*, 04-2482 (La. App. 1 Cir. 2/16/05), 906 So. 2d 586 (grandparents instituted custody action where parents were never married); *In re C.A.C.*, 17-0108 (La. App. 4 Cir. 11/2/17), 231 So. 3d 58 (finding the biological mother's former same-sex partner stated a cause of action for custody under Article 133); *Neathery v. Neathery*, 51,388 (La. App. 2 Cir. 2/17/17), 216 So. 3d 251 (biological parent's cousin, who raised the child by agreement with the parent, sought sole custody); *see also Francis v. Francis*, 11-2116 (La. App. 1 Cir. 6/13/12), 97 So. 3d 1091, 1095-96, *writ denied*, 12-1635 (La. 7/24/12), 93 So. 3d 582 (finding grandparents had no right of action to pursue visitation under Louisiana Civil Code article 136 because they had not been denied custody under Article 133).

The mother's arguments are without merit.

## SERVICE OF PROCESS

The mother next contends the Family Court erred in proceeding without providing her proper service or notice. She argues the Family Court and grandparents rely on notice provided to Ms. Raborn in open court; however, that

14

notice was insufficient because Ms. Raborn was never her attorney of record in this suit.

The Family Court found that Ms. Raborn was counsel of record for the mother in this suit. The court based its finding on Ms. Raborn's appearance for the mother at the first hearing, noting Ms. Raborn represented that she called the mother, who waived her appearance. The record supports the Family Court's findings. We find no merit in the mother's argument. *See* La Code Civ. Pro. arts. 1235 and 1314; *Foster v. Foster*, 10-0353, 2010WL2342769, p. 2 (La. App. 1 Cir. 6/11/10).

## CUSTODY

Finally, the mother contends the trial court erred in awarding sole custody of the children to the grandparents and denying her visitation, communication, or contact with the children. She argues the Family Court's judgment effectively amounts to the involuntary termination of her parental rights, which no individual has a right of action to seek.

This suit represents the initial custody contest between the surviving parent and the grandparents.[4] In a conflict between a parent and a non-parent, the parent enjoys the paramount right to custody of the children and may be divested of that right only for compelling reasons shown by clear and convincing evidence. The non-parent bears the burden of proving that granting custody to the parent would result in substantial harm to the child, thus necessitating an award of custody to a non-parent. La. Civ. Code art. 133; *Bernard v. Bernard*, 18-1149 (La. App. 1 Cir. 2/12/19), 272 So. 3d 561, 564. The term "substantial harm" carries no magical connotation and has been used interchangeably with "detrimental" in the jurisprudence. *Smith*, 906 So. 2d at 590. If divestiture or modification of parental custody is warranted under Article 133, custody is awarded in the best interest of the

---

[4]     The record before us reflects that the previous suit resulted in a temporary *ex parte* custody order, but custody was not decided. Although the parties have referenced further proceedings in the previously dismissed suit, evidence in that regard does not form part of the record on appeal.

children to "another person with whom the [children have] been living in a wholesome and stable environment, or otherwise to any person able to provide an adequate and stable environment." *Smith*, 906 So. 2d at 590.

The Fourth Circuit Court of Appeal has explained:

> [A] parent's right under the constitution [(to make decisions concerning the care, custody, and control of their children)] is neither absolute nor perpetual. That right attaches at the birth of a child. But, parents acquire the substantial protection of their interest in a child's custody under the Due Process Clause by demonstrating a full commitment to the responsibilities of parenthood by " '[coming] forward to participate in the rearing of his child.' " As with all constitutional rights, a parent's right must be balanced with the child's right to a custodial arrangement which promotes his or her best interests.

*In re C.A.C.*, 231 So. 3d at 67 (footnotes omitted).

The best interest of the children is the guiding principle in all custody determinations. Louisiana Civil Code article 134 sets forth the factors for determining the best interest of the children, which apply in actions to change custody and to fix custody initially. *Tracie F. v. Francisco D.*, 15-1812 (La. 3/15/16), 188 So. 3d 231, 239. In most cases, the Family Court's determination regarding the best interest of the children is based heavily on factual findings, which are subject to the manifest error standard of review. *Ehlinger v. Ehlinger*, 17-1120 (La. App. 1 Cir. 5/29/18), 251 So. 3d 418, 422. The Family Court's custody determination will be overturned only when there is a clear abuse of discretion. *Smith*, 906 So. 2d at 591.

The Family Court found clear evidence that custody should be awarded to the grandparents. With the mother's consent, the children had been in the grandparents' custody for four years, which amounted to most of the younger child's life and more than half of the older child's life. During that time, the grandparents provided for all of the children's needs. Meanwhile, the mother left the rehabilitation facility without completing the program, which the Family Court found problematic given the mother's history of substance abuse and addiction. The Family Court questioned

16

whether the mother and Ms. Raborn used the tutorship documents to mislead the school officials, and whether Ms. Raborn had obstructed the court's orders.

The record supports the Family Court's findings. Ms. Raborn left the hearing and presented no testimony on the mother's behalf. The record contains a post-hearing memorandum, filed by Ms. Raborn, which attached numerous exhibits labeled as proffers. Although Ms. Raborn indicated, before leaving the hearing, that she wanted to proffer evidence, she did not do so. Since the evidence was not properly proffered, and instead was only attached to a memorandum filed into the record, it cannot be considered on appeal. *See Denoux v. Vessel Mgmt. Servs., Inc.,* 07-2143 (La. 5/21/08), 983 So. 2d 84, 88 ("Evidence not properly and officially offered and introduced cannot be considered, even if it is physically placed in the record. Documents attached to memoranda do not constitute evidence and cannot be considered as such on appeal.").

Considering the record before us we find no error in the Family Court's determination that the grandparents met their burden of proving, by clear and convincing evidence, that the children would suffer substantial harm in the mother's custody. The Family Court awarded custody to the grandparents, with whom the children had been living in a wholesome, stable, and loving environment. We find no abuse of discretion in the award.

The mother additionally complains about the Family Court's order that she have no contact with the children. In making her argument, the mother points to the evidence allegedly proffered. As discussed, that evidence was not properly proffered and is not properly before this court for review. However, in light of the mother's arguments that she has evidence to be considered on the issue, we affirm the judgment, but remand this matter to the Family Court and order that it hold an evidentiary hearing to determine whether the mother should be awarded some form of visitation with the children.

**CONCLUSION**

The judgment of the Family Court is affirmed.  This matter is remanded with instructions that the Family Court hold an evidentiary hearing on the issue of visitation, as set forth herein.  Costs of this appeal are assessed to J.E.

**JUDGMENT AFFIRMED; REMANDED WITH INSTRUCTIONS.**